## Richmond

### WILLIAM RAY BRITTLE

### V.

### COMMONWEALTH OF VIRGINIA

September 11, 1981.

Record No. 801655.

Present: All the Justices.

*George M. Rogers, III (Saunders, Rogers & Blount,* on brief), for appellant.

*Robert E. Bradenham, II, Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

Found guilty by a jury of murder in the first degree and use of a firearm in the commission of murder, defendant William Ray Brittle was sentenced in accordance with the verdicts to imprisonment for life and one year respectively. We awarded him an appeal from the July 1980 judgments of conviction, limited to consideration of one question: Did the trial court err in refusing to sustain defendant's motion to set aside the verdicts made upon the ground that numerous photographs of the crime scene, not admitted in evidence, were examined and considered by the jurors during deliberations?

On December 28, 1979 about 8:15 p.m., the body of Geraldine Sutton, age 28, was found in the kitchen of her trailer home in Gloucester County by her estranged husband, Douglas M. Sutton, who lived in Hampton. She had sustained multiple bullet wounds to the head and neck causing her death about two or three hours earlier. Sutton, age 25, and his wife had been separated for seven months but recently had decided to reconcile. During a portion of that period, defendant had lived with the victim in the trailer. At the time of her death, the victim was 12 weeks pregnant.

Within a week of the murder, the defendant, age 30, was arrested in Annapolis, Maryland, where he had been hospitalized

after becoming ill in a Maryland motel room on December 30. Defendant denied committing the murder, testifying he had a memory loss from the day before the crime, when he had rented an automobile in Newport News, until he was being attended by paramedics in the Maryland motel room.

Among the exhibits received in evidence during the trial were eight color photographs of the crime scene. They were introduced through one of the investigating police officers who took the pictures shortly after discovery of the body. Seven of the photographs were offered by the prosecutor. Defendant objected to the receipt of four. One was tendered by defense counsel; it showed a corner of the kitchen including the sink, stove, cabinets and part of a kitchen table. Five of the photos showed the body lying near a pool of blood and a broken chair. The remaining two pictures were close-up views of a table top on which were empty cartridge casings and a physician's bill addressed to "Ray Brittle."

Twenty days after the judgments were entered, defendant filed a motion to set aside the verdicts asserting, *inter alia,* that "within a short time" after sentencing, the Commonwealth's Attorney and defense counsel "had a conversation with one or more of the Jurors who had sat on the case." The defense counsel learned that "numerous photographs," not admitted or offered in evidence, were included among the exhibits carried to the jury room and examined by the jurors. The motion alleged that the verdicts were "tainted" because the jury considered matters not properly received in evidence.

Within three weeks after the motion was filed, the trial court held a hearing at which all 12 jurors testified. The evidence showed that a total of 90 unintroduced color photos, taken by the same investigator who took the eight pictures properly received in evidence, had been inadvertently given to the jury along with the exhibits and had been examined during deliberations. Each juror testified, however, with varying degrees of certainty, that the 90 photographs did not influence the decision to convict. Following the hearing, the trial judge denied the motion.

On appeal, the Attorney General argues that "the accidental admission" of the 90 photos was harmless error beyond a reasonable doubt, "given the facts and circumstances of this case." He says 48 of the photographs were "duplicates or different angle shots of the same subject matter previously depicted in the eight introduced photographs." He urges that the remaining 42 pictures

were of "irrelevant and immaterial subject matter surrounding the crime scene," such as a doorway, wall, bedroom, utility area, trash can, carpet, bookcase, curtains, bathroom, den, television, and door. He says the photos did not indicate who murdered the victim and did not incriminate the defendant. We do not agree that the court below correctly refused to set aside these verdicts.

A juror may not properly receive any information about a case he is hearing except in open court and in the manner provided by law. *Crockett* v. *Commonwealth,* 187 Va. 687, 706, 47 S.E.2d 377, 386 (1948). The reception of any evidence by the jury, especially in a criminal case, in addition to that produced at trial is ground for setting aside the verdict whenever there is sufficient ground to believe that one of the parties in a civil suit, or an accused in a criminal case, has been prejudiced by receipt of the information. *Id.; Hinton* v. *Gallagher,* 190 Va. 421, 432, 57 S.E.2d 131, 136 (1950). And the test in a criminal case "is not whether the jurors were actually prejudiced by the extraneous matter, but whether they might have been so prejudiced. If they might have been prejudiced, then the purity of the verdict is open to serious doubt and the verdict should be set aside and a new trial awarded." *Thompson* v. *Commonwealth,* 193 Va. 704, 715, 70 S.E.2d 284, 290 (1952).

These convictions were based entirely on circumstantial evidence. For example, defendant's fingerprints were found on drinking glasses in the kitchen of the trailer, defendant admitted he had been in the trailer two days before the murder and the victim was killed by bullets from a gun similar to one purchased by defendant about two weeks before the homicide. Consequently, the inferences flowing from each bit of evidence were important both to the prosecution and to the defense. Thus, if the information supplied by any of the unintroduced photos tends to incriminate the accused or affects the grade of the offense, we must find the jury might have been prejudiced against defendant by virtue of such information.

Contrary to the Attorney General's analysis of what the 90 pictures show or fail to show, our review of them demonstrates that at least 20 either add an ingredient tending to incriminate defendant or affect the grade of the crime.

Eight photos depict a clearly defined bloody shoe print, not shown by the properly admitted photos or otherwise disclosed by the evidence, located on the floor in the immediate area where the

body was found. When asked whether the jury discussed the shoe print during the deliberations, one juror answered affirmatively, indicating the bloody print was not from "work shoes" but was probably from "a tennis shoe or something of that order." This information was significant because throughout the trial the role, if any, played by the husband of the victim was emphasized by the prosecutor as well as the defense. The Commonwealth urged that Sutton did not kill his wife but that the accused did; defendant sought to implicate Sutton as the assailant. Sutton, a mechanic at a Hampton tire company, arrived at the trailer from work to discover the body. He was presumably wearing the same work shoes that, according to the evidence, he had put on that morning. Therefore, a belief that Sutton did not make the bloody print might have led the jurors, or at least one of them, to eliminate Sutton as a possible assailant and thus focus on defendant as the murderer.

Twelve of the unintroduced photos showed the window curtains in the trailer home completely closed, a circumstance not revealed by the testimonial evidence or any of the properly admitted photos. One of the jurors testified that the closed curtains, as evidenced in the photographs, indicated the murder "was planned." Under the instructions, the defendant could have been convicted of murder in the first degree, murder in the second degree, or voluntary manslaughter. Manifestly, whether the murder was "planned" had a material effect on whether the jury found sufficient deliberation and premeditation to support a conviction of murder in the first degree.

For these reasons, and even though the jurors said they were not actually prejudiced against defendant by examination of the pictures in question, we hold that they might have been so prejudiced, either as to the guilt of the accused or as to the grade of the offense. In short, we cannot say the error in question was harmless.

We will, therefore, reverse the convictions and remand the cases for new trials, if the Commonwealth be so advised.

*Reversed and remanded.*