COMMERCIAL UNION INSURANCE COMPANY

V.

ESTHER L. MOOREFIELD, ADMINISTRATRIX, ETC., ET AL.

Record No. 830506

April 25, 1986

Present: All the Justices

*W. Charles Waddell, III* for appellant.
*Sandra Keen McGlothlin (Keary R. Williams; McGlothlin & Wife; Williams & Gibson,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

This appeal arises from an action on an insurance contract to recover for a fire loss occurring on residential property. The sole question is whether a verdict properly was set aside because of alleged juror misconduct which took place before the trial commenced.

In February 1980, the Buchanan County residence of Fred J. and Esther L. Moorefield was damaged by fire. At the time, he was the named insured in a policy providing fire coverage issued by appellant Commercial Union Insurance Company. He died in

February 1981. Seven months later, she, individually and as administratrix of her husband's estate, filed the present action against the insurer to recover under the policy for fire damage to the home and its contents. In the grounds of defense, the insurer alleged the fire was set deliberately by Fred Moorefield.

In the first trial held in March 1982, a jury found for the defendant insurer. The plaintiffs filed a motion to set aside the verdict, alleging that "[p]rior to selection of the jury panel and during the jury deliberation, the jury considered extraneous evidence which was not adduced at trial; and such evidence was used by the jury in reaching the verdict." After a hearing, the trial court sustained the motion and granted the plaintiffs a new trial.

In the second trial in December 1982, another jury found for the plaintiffs and assessed damages in the amount of $40,000. We awarded the insurer this appeal. The sole assignment of error is that the trial court erred in granting the plaintiffs' motion to set aside the first verdict and in awarding a new trial.

In the April 1982 hearing on the motion to set aside, only one witness testified. Called by the plaintiffs, Pricilla Ann Yates, age 28, testified that she was on the thirteen-person jury panel summoned for the first trial. Yates did not serve because she was stricken peremptorily.

Yates testified that, while at the courthouse "early that morning" before trial, she "and some more of the ladies were all standing there talking." According to Yates, Esther Moorefield "had come through and when she did," June L. Dotson asked Yates "who she was." Dotson, another panel member, later was selected and served on the jury. Yates testified she responded to Dotson, " 'That is one of my girlfriends.' " Dotson asked Yates how she "got to know Esther." Yates told Dotson she and Moorefield were members of the same local ladies' auxiliary.

According to Yates, she told Dotson, " 'She has had an awful hard life.' " Dotson wanted to know "why." Yates testified, "I went into detail and said that a friend at the club had accused her husband of burning their house down." Yates further testified, "June went on and asked me more questions about it."

Referring to juror Dotson, Yates also testified: "She nor I neither one knew that Esther had a lawsuit in with an insurance company . . . . I mean, that wasn't even part of our discussion. She was more or less wanting to find out about the Ladies' Auxiliary, but then she wanted to know how we become friends."

The record shows that, during the voir dire, the trial court did not give a detailed summary of the pleadings. The court only advised the panel that they were about to hear an action by Moorefield, in her individual and representative capacities, against the insurer "based on alleged losses sustained as a result of a fire to the residence or home." The basis of the insurer's defense was not mentioned during voir dire. Following this summary of the case, the trial court asked the jurors, among other things, whether they had "discussed this case or heard it discussed," whether they were "aware of any bias or prejudice in this case," and whether they knew of any reason why they could not render a fair and impartial verdict in the case. The record shows the prospective jurors shook their heads "negatively" in response to these questions.

Testifying on cross-examination during the hearing on the motion to set aside the verdict, Yates said that she had known Esther Moorefield "for the last four or five years through the club" and that she and Moorefield's nephew "work together." Yates stated she learned the outcome of the trial from the nephew and called Moorefield, telling her that she may have caused Moorefield to lose the case due to the statements made to Dotson. At Moorefield's suggestion, Yates contacted Moorefield's attorney. The motion to set aside subsequently was filed.

At the conclusion of the hearing on the motion, the trial court invited counsel to file memoranda of law on the issues raised and stated, "the Court will give you an opportunity to present any evidence in the case or to recall [Yates], if need be." One issue raised was whether the trial court, in a post-trial hearing, properly could receive testimony from a member of the jury panel.

In a memorandum subsequently filed in June 1982, counsel for the insurer argued that if the court construed the incident as one of juror misconduct, as the plaintiffs alleged, the trial court had "the power to summon June Dotson to court for an examination concerning whether the conversation occurred and, if so, whether it affected the jury deliberations." In July 1982, the trial judge notified counsel by letter that he had decided to award plaintiffs a new trial. The court reasoned that because the "real issue" in the case was whether or not the fire was set intentionally, "the statements made in the presence of one or more jurors to that effect could very well have been very prejudicial."

Within a week, the insurer filed a motion asking the court to reconsider its ruling. The insurer moved the court "to summon June Dotson before the court to give oral testimony." Noting that in its prior memorandum it had "requested" that the " 'tainted juror' " Dotson be questioned about whether the alleged conversation occurred and, if so, whether it affected the jury deliberations, the insurer urged the court to "exercise its power to examine June Dotson before ruling on the plaintiffs' motion."

Filed with the motion to reconsider was an affidavit executed by counsel of record for the insurer. The affidavit recited that counsel had contacted Dotson by telephone in May 1982 in order to determine whether she had a conversation with Yates on the morning of trial. The affidavit stated that Dotson said she "recently" had been asked by Yates if she remembered the conversation and whether Dotson had been influenced by it. The affidavit further shows Dotson said that "she did not remember such a conversation and that, in any event, such a conversation would not have influenced her decision."

In a further memorandum filed with the court in August 1982, the insurer argued: "Virginia case law is clear that the Court may properly summon June Dotson to Court to be examined with respect to the alleged misconduct and any influence it may have had on the jury deliberation." Accordingly, the insurer contended, the court should summon the juror for examination before granting plaintiffs' motion to set aside.

In September 1982, the trial judge stated in another letter to counsel that the court was still of the opinion that the motion for a new trial should be granted. The court said: "By having another trial the appearance of impropriety brought about by the comments in the presence of the jurors about the fire being voluntarily set would be eliminated and therefore harmless." The court did not address the request that the juror be examined prior to a ruling on the motion to set aside. The ground assigned in the order granting the new trial was "that extraneous statements made in the presence of one (1) or more jurors could have prejudiced the jury in determining the major issues of this action."

On appeal, the insurer argues the trial court erred in using testimony from Yates alone as the basis for setting aside the verdict and erred in failing to interrogate Dotson before ruling on the motion. The plaintiffs disagree with the insurer and contend the trial court properly exercised its discretion in granting a new trial.

■ Certain settled principles relating to alleged unfair and improper influences on jurors in civil cases are essential to our review. All parties to the litigation are entitled to a fair and impartial trial by a jury of persons who "stand indifferent in the cause." Code § 8.01-358. A motion for a new trial on the ground of juror misconduct is addressed to the sound discretion of the trial court and, unless there has been abuse of that discretion, the judgment below will not be reversed on appeal. *Litz* v. *Harman*, 151 Va. 363, 375, 144 S.E. 477, 480 (1928).

■ But neither the sole fact of irregularity nor the mere suspicion of injustice based upon the irregularity is sufficient to warrant setting aside a verdict. "Mere suspicion or possible inferences cannot be allowed to overrule the orderly administration of justice, for otherwise there would be continued delays and many proper verdicts set aside. The importance of avoiding another trial, if the first trial was fair, is of paramount importance." *Yellow Cab Corp.* v. *Henderson*, 178 Va. 207, 221, 16 S.E.2d 389, 396 (1941), *quoted in Davis* v. *Webb,* 190 Va. 997, 1003, 59 S.E.2d 116, 119 (1950).

■ In considering a motion to set aside when juror misconduct is alleged, the trial court has the affirmative duty "to investigate the charges and to ascertain whether or not, as a matter of fact, the jury was guilty of such misconduct." *Kearns* v. *Hall*, 197 Va. 736, 743, 91 S.E.2d 648, 653 (1956). The trial court properly may summon one or more jurors to testify under oath in open court and to answer relevant questions propounded by the court and counsel about what had transpired. *Dozier* v. *Morrisette*, 198 Va. 37, 40, 92 S.E.2d 366, 368 (1956). This is an exception to the general rule that testimony of jurors is inadmissible to impeach their verdict. *Id.*, 92 S.E.2d at 368. Ordinarily, jurors will not be allowed "to explain their verdict by stating the reasons upon which their conclusions are based." *Federal Deposit Insurance Corp.* v. *Mapp*, 184 Va. 970, 983, 37 S.E.2d 23, 28 (1946).

■ Although juror testimony may be received upon an issue of juror misconduct, hearsay affidavits are not admissible in support of a motion for a new trial. *Kearns* v. *Hall*, 197 Va. at 742, 91 S.E.2d at 652. Nevertheless, such an affidavit may be sufficient to require the trial court to investigate the matters recited in the document. *Id.*, 91 S.E.2d at 652. *See Dozier*, 198 Va. at 40, 92 S.E.2d at 368.

■ The test to be used in determining whether a verdict should be set aside, when alleged juror misconduct may have affected the impaneling of jurors, is mandated by statute. Code § 8.01-352 provides that an unintentional "irregularity" in the "impaneling of jurors" shall not be cause for setting aside a verdict or granting a new trial "unless it appears . . . that the irregularity . . . be such as to probably cause injustice . . . in a civil case to the party making the objection." This standard was adopted in 1973 to be included in former Code § 8-208.27. Acts 1973, ch. 439 at 651. We applied a predecessor to current § 8.01-352 in *Oyler* v. *Ramsey*, 211 Va. 564, 179 S.E.2d 904 (1971), a damage suit involving a situation of alleged juror misconduct analogous to the instant case. There, under a slightly different statutory standard, we held a new trial was not warranted when a juror stood mute when the trial court asked the prospective jurors on voir dire: " 'Do any of you have any close business relations with either of the parties or any of the attorneys in the case?' " 211 Va. at 565, 179 S.E.2d at 905. Defense counsel learned after the verdict that plaintiff's counsel at the time of trial was representing one of the jurors in a damage claim pending in another court.

Against this background, we turn to the present facts to determine whether the trial court properly sustained the plaintiffs' motion to set aside, keeping in mind the precise ground of the motion, that is: "Prior to selection of the jury panel and during the jury deliberation, the jury considered extraneous evidence which was not adduced at trial; and such evidence was used by the jury in reaching the verdict." These allegations are aimed at the effect of Yates' statements on the deliberations of the jury collectively and Dotson individually. Because of the charges made in the plaintiffs' pleading and because of the information disclosed in the affidavit, the trial court had the responsibility to fully investigate the matter to determine whether the situation was such "as to probably cause injustice," according to the statutory standard.

■ Under these circumstances, an inquiry into the effect of innocent but improper pre-trial statements made to a juror is incomplete when the trial court has not summoned and examined the particular juror to whom the statements were made. Information only from a non-juror, a person not privy to jury deliberations, is inadequate to form the basis for a conclusion that the jury's deliberative process was probably tainted by extraneous statements.

Consequently, we hold that the trial court abused its discretion in failing to summon and examine juror Dotson. Only Dotson, or perhaps other jurors, could competently furnish probative information to the court on the issues raised. For example, Dotson may not have fully heard or clearly understood Yates' statement that a third party said the husband intentionally set fire to his own home. Her attention instead may have been on the activities of the ladies' auxiliary. Moreover, assuming Dotson heard and understood the statement, she may have discounted it as purely hearsay and rumor. And, even if she accepted the statement, Dotson may have disregarded it in an effort to be a conscientious juror and to give the parties a fair trial. In these connections, a court, without evidence on the subject, should not presume that a juror has lied on voir dire when, as here, she has denied that she had discussed the case or heard it discussed and has indicated that she was unbiased and could render an impartial verdict in the case.

■ Finally, plaintiffs argue the defendant waived its right to insist that Dotson be examined. According to the argument, defendant failed to summon Dotson, failed to make explicit, timely demand that the court take such action, and failed to arrange for a hearing at which Dotson's testimony could be presented. We reject this contention. As the recitation of the facts has demonstrated, before entry of the new-trial order defendant reminded the trial judge on three occasions that the court had the power to summon Dotson, and on two occasions formally moved the court to summon Dotson before finally ruling on the motion. Although counsel could have been more aggressive in obtaining Dotson's testimony, the trial court cannot shift to counsel its duty to conduct a full investigation. After all, a jury that has been formally impaneled becomes an integral part of the judicial process for the trial of that particular case. That judicial structure is under the direct supervision and control of the presiding judge. Understandably, counsel may be reluctant to assume control over any part of the judicial apparatus, even when the jury has been discharged after verdict. And, significantly, the trial court did not hold that counsel had waived the right to insist that Dotson be summoned and examined by the court.

■ For these reasons, we conclude that the trial court erred in setting aside the first verdict. However, we will not reinstate the first verdict, as the defendant urges. Instead, we will remand the case for further hearing on the motion to set aside. In so doing, we

will follow precedent established by this Court in *Kearns* v. *Hall*, *supra*.

In that case, the trial judge set aside a defendants' verdict in a damage suit arising from an automobile accident on the ground of juror misconduct during a court-authorized view of the scene at which the trial judge and counsel were not present. In sustaining a motion to set aside the verdict, the court relied upon an affidavit of one of the attorneys for the plaintiff relating information he had obtained from four of the jurors, and upon the court's ex parte conversations with the deputy sheriff and deputy clerk who accompanied the jury on the view. Following a second trial resulting in a verdict and judgment for the plaintiff, this Court reversed. The Court held that the trial court had "erred in refusing to call the jurors and the court's officers . . . as witnesses to testify under oath, as to the accuracy of the allegations of the jury's misconduct contained in [the] affidavit." 179 Va. at 743, 91 S.E.2d at 653. The *Kearns* Court did not reinstate the first verdict. Rather, the case was remanded to the lower court to determine whether the jury in the first trial was guilty of such misconduct as warranted the setting aside of their verdict. We shall do likewise.

Accordingly, the verdict and judgment in the second trial in favor of the plaintiff will be set aside, the order setting aside the first verdict and awarding a new trial will be annulled, and the case will be remanded to the trial court with directions. The trial court shall conduct a further investigation, within the framework of the motion to set aside and in accordance with the views expressed in this opinion, to determine whether any irregularity in impaneling the first jury was such as to probably cause injustice. If the court so finds, it shall sustain plaintiffs' motion to set aside, reinstate the second verdict, and enter judgment on it. If the court finds to the contrary, it shall overrule the plaintiffs' motion, reinstate the first verdict, and enter judgment on that verdict.

*Reversed and remanded.*