Salem

BOBBY GENE HARRIS

v.

COMMONWEALTH OF VIRGINIA

No. 0922-90-3

Decided September 10, 1991

48

COUNSEL

Robert V. Ward (Woodward, Miles & Flannagan, P.C., on brief), for appellant.

Linwood T. Wells, Jr., Assistant Attorney General (Mary Sue Terry, Attorney General; Robert Q. Harris, Assistant Attorney General, on brief), for appellee.

OPINION

**WILLIS, J.**—Bobby Gene Harris was convicted in a jury trial held November 11 and 12, 1987 of robbery, grand larceny and use of a firearm in the commission of a felony. The jury fixed his punishment at confinement in the penitentiary for fifty years on the robbery charge, two years on the firearm charge, and five years on the larceny charge, and sentence was imposed in accordance with the verdicts.

On November 16, 1987, the foreman of the jury, Mr. Finney, reported to the trial judge that he was troubled by some discussion that had occurred during the jury's deliberations. The only record of that report is found in the trial court's November 18, 1987 let-

ter to counsel, wherein the trial judge stated:

Mr. Finney advised that one of the male members of the jury indicated that he was associated in some fashion with the Department of Corrections and proceeded to explain to the jury how the parole system would come into play with regard to various sentences that the jury was considering. Mr. Finney advised that he would estimate that a significant number of the jurors would not have voted for such a substantial sentence except for the input from this juror.

██ On November 27, 1987, the appellant moved the trial court to investigate Mr. Finney's report. At a hearing held December 16, 1987, after hearing argument of counsel, the trial court denied that motion. That denial was error.

Under our system, the assessment of punishment is a function of the judicial branch of government, while the administration of such punishment is a responsibility of the executive department. The aim of the rule followed in Virginia is to preserve, as effectively as possible, the separation of those functions during the process when the jury is fixing the penalty, in full recognition of the fact that the average juror is aware that some type of further consideration will usually be given to the sentence imposed.

*Hinton v. Commonwealth*, 219 Va. 492, 496, 247 S.E.2d 704, 706 (1978). In *Hinton*, in response to a jury question concerning the effect of parole, the trial judge responded, in part:

The answer that I understand I am required to give you, is that while there is a system for the early release of prisoners, that it is within the province of the Correctional System of this State and is not the concern of the Court, nor is it the concern of the jury.

Your jury function is to resolve the facts and determine guilt or innocence and to fix any punishment . . . it is then up to the Correctional System to determine when an individual is to be released from custody.

Sometimes people never serve their entire sentence and get off with good behavior or for becoming disciplined or rehabil-

itated in confinement, and never serve their entire sentence, but are considered for early release at some point when they are in confinement; and when that is, is a matter that is entirely up to the Parole Board and is not for the Court or jury to be concerned about.

I would like to answer you further, . . . I would like to advise you about the possibility of early release, but I'm not allowed to tell you what it is in order that you may take it into consideration. . . .

*Id.* at 494, 247 S.E.2d at 705. Reversing a judgment based on a verdict returned pursuant to the foregoing instruction, the Supreme Court said:

And we cannot say that the error here was not prejudicial to the accused. As the defendant argues, the jury's question would have been necessary only if one or more of the jurors contemplated voting for a sentence less than the maximum; the inquiry would have been superfluous if the jury had already decided to assess the twenty year penalty . . . . Consequently, prejudice to the defendant is manifest.

*Id.* at 496, 247 S.E.2d at 706-07; *see also Clark v. Commonwealth*, 220 Va. 201, 214, 257 S.E.2d 784, 792 (1979), *cert. denied*, 444 U.S. 1049 (1980).

Virginia has been more careful than most states to protect the inviolability and secrecy of jurors' deliberations. We have adhered strictly to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct. . . . Moreover, the unanimous verdict is the best evidence of each juror's opinion of the case. We have recognized, however, that there may be exceptional cases where juror testimony might be admissible to impeach their verdict to prevent a miscarriage of justice. In such cases, that testimony should be received with great care and caution.

*Caterpillar Tractor Co. v. Hulvey*, 233 Va. 77, 82, 353 S.E.2d 747, 750-51 (1987) (citations omitted).

Whether a trial court should examine jurors is a matter addressed to the court's sound discretion, and, absent an abuse of discretion, its decision will not be disturbed on appeal. Moreover, unless there is a substantial reason to believe that juror misconduct has occurred, a court may decline to question the other jurors in that regard.

*Bradshaw v. Commonwealth*, 228 Va. 484, 491, 323 S.E.2d 567, 571 (1984) (citations omitted).

■ "It has long been settled in Virginia that the affidavits or the testimony of jurors to impeach their own verdicts are to be received with great care and caution and only in exceptional cases, and in order to prevent a failure of justice." *Phillips v. Campbell*, 200 Va. 136, 140, 104 S.E.2d 765, 768 (1958) (citations omitted).

In considering a motion to set aside when juror misconduct is alleged, the trial court has the affirmative duty "to investigate the charges and to ascertain whether or not, as a matter of fact, the jury was guilty of misconduct." The trial court properly may summon one or more jurors to testify under oath in open court and to answer relevant questions propounded by the court and counsel about what had transpired. This is an exception to the general rule that testimony of jurors is inadmissible to impeach their verdict.

*Commercial Union Ins. Co. v. Moorefield*, 231 Va. 260, 265, 343 S.E.2d 329, 333 (1986) (citations omitted).

A juror may not properly receive any information about a case he is hearing except in open court and in the manner provided by law. The reception of any evidence by the jury, especially in a criminal case, in addition to that produced at trial is ground for setting aside the verdict whenever there is sufficient ground to believe that one of the parties in a civil suit, or an accused in a criminal case, has been prejudiced by receipt of the information. And the test in a criminal case "is not whether the jurors were actually prejudiced by the extraneous matter, but whether they might have been so prejudiced. If they might have been prejudiced, then the purity of the verdict is open to serious doubt and the verdict should be set aside and a new trial awarded."

*Brittle v. Commonwealth*, 222 Va. 518, 522, 281 S.E.2d 889-90 (1981) (citations omitted). In *Brittle*, the Supreme Court reversed the refusal of the trial court to set aside a verdict upon learning that photographs not admitted into evidence had been taken erroneously into the jury room and were considered by the jury in its deliberations.

In *Evans-Smith v. Commonwealth*, 5 Va. App. 188, 361 S.E.2d 436 (1987), the trial court received an affidavit from a juror reporting that another juror had consulted an almanac, not in evidence, and had reported his findings to the jury during deliberations, and that this information had influenced her to change her vote from "not guilty" to "guilty." The trial court received affidavits from seven other jurors, acknowledging that the extraneous information had been received during deliberations, but averring that it had not been received at such a time or in such a manner as to affect the jury's determination of guilt or innocence. The trial court denied the defendant's motion that the jury be summoned in for examination as to whether it was guilty of misconduct which influenced its verdict and denied the defendant's motion that the verdict be set aside. Without reaching the question of whether the verdict should have been set aside, we held that the trial court erred in failing to summon the jurors for inquiry to determine whether they might have been influenced by consideration of the extraneous almanac information. We said:

> The principle is well settled that a juror may not impeach a verdict solely upon his mental processes. Here, however, the alleged misconduct was not the jurors' mental processes, but the evidence, *aliunde*, which may have influenced their mental processes. When there is a probability that such external evidence has influenced the jury, the court has "the affirmative duty 'to investigate the charges and to ascertain whether . . . as a matter of fact, the jury was guilty of such misconduct.' " Accordingly, we hold that the affidavits proffered to the court and made a part of the record warranted further investigation by the court.

*Id.* at 209, 361 S.E.2d at 448.

In this case, the information concerning parole which was brought to the jury deliberations was, in effect, evidence, *aliunde*. It was not a mere expression of opinion or argument by a juror.

According to the trial court's description of Mr. Finney's report, it was a specific factual assertion, expressed authoritatively and in the context of particular personal knowledge and experience. There was plainly a high likelihood of prejudice to the appellant. Furthermore, that evidence was inadmissible on several grounds, certainly on grounds of relevance and prejudice. Had that information been given to the jury by the trial judge, his instruction would have been ground for reversal.

■ While the law makes allowance for the fact that jurors of necessity bring to their deliberations information extraneous to trial, and while the law commits to the sound discretion of the trial judges the determination of whether such information is compatible with justice, that determination cannot be made soundly except upon inquiry. We hold, therefore, that under the circumstances of this case, in the face of a reliable report showing a substantial likelihood of significant prejudice to the appellant, the trial court abused its discretion and erred in denying appellant's motion that the jury be summoned for examination as to the nature and influence of the extraneous information brought to it concerning parole.

This case is remanded to the trial court which shall resummon the jury and conduct a hearing to determine whether the jury was influenced in determining sentence by the information improperly brought to it. If such a hearing is not feasible, or if the trial court determines that the jury was influenced by the improper information, it shall vacate the sentences imposed and undertake appropriate proceedings, including the impaneling of a new jury if necessary, for the proper determination of sentence. The convictions shall remain undisturbed.

If the charges be reheard for the purpose of fixing sentence, the trial court shall receive all competent evidence, admissible in the original trial, relevant to the determination of sentence.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Koontz, C.J., and Duff, J., concurred.