COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Overton
Argued at Alexandria, Virginia


ROLAND ANTHONY EVANS
                                            OPINION BY
v.   Record No. 2893-01-4        JUDGE JAMES W. BENTON, JR.
                                        NOVEMBER 26, 2002
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
                   Walter J. Ford, Judge Designate

            James C. Clark (Land, Clark, Carroll,
            Mendelson & Blair, P.C., on brief), for
            appellant.

            Richard B. Smith, Senior Assistant Attorney
            General (Jerry W. Kilgore, Attorney General,
            on brief), for appellee.


     Roland Evans contends the trial judge erred in sustaining

the Commonwealth's objection to a witness' testimony and by

denying Evans's motion for an evidentiary hearing to investigate

juror misconduct.  Because the record does not contain a proffer

of the witness' expected testimony, we cannot determine whether

the judge erred in sustaining the objection to the testimony.  In

addition, we hold the trial judge made a premature credibility

finding on the issue of juror misconduct.  We, therefore, reverse

the trial judge's decision on the motion and remand for an

evidentiary hearing.

The evidence at trial proved that in the Fall of 2000, Evans met a woman, named Williams, at the barber shop where he worked and where she received hair cuts. After Evans and Williams developed a friendship, they had meals together, watched movies and television together, and smoked marijuana together. On three occasions, Evans spent the night on a sofa in Williams's apartment. Williams, however, denies ever having consensual sex or using cocaine with Evans.

Williams testified that on December 27, 2000, Evans came to her home unannounced after 10:00 p.m. Although Williams had already retired for the evening and initially ignored the knocking at her door, she eventually admitted Evans to her apartment. While they sat on the sofa and talked, Williams noticed that Evans had been drinking alcohol and told him to leave. When Evans was reluctant, Williams opened the door and insisted that he leave. Evans then grabbed her by the throat, closed the door, wrestled her, and hit her. Williams testified that she screamed and knocked over things in the room, hoping someone would hear her. The person who lives in the apartment below Williams testified that she heard noises indicating a fight was occurring in Williams's apartment between 11:00 p.m. and 3:00 a.m.

When Williams realized she was getting nowhere by struggling, she begged Evans to stop the assault and said, "you can do anything you want to do to me, just don't hit me [any] more." Williams testified that Evans raped her on the sofa and then forced her into the bedroom, where he sodomized her and

raped her again.  She testified that the assault stopped only when Evans became sick.  After Evans vomited and fell asleep, Williams left her apartment wearing only a shirt and asked the apartment's attendant to call the police.  The police arrived at 4:30 a.m. and found Evans sleeping on Williams's bed and arrested him.

Evans had a different account of the events.  He testified that he and Williams had consensual intercourse that night.  He said fighting occurred only after Williams refused to pay him for cocaine he earlier had obtained for her.  Evans testified that he became angry and threatened to take Williams's car.  When Williams fought him for the car keys, she suffered injuries and items in her apartment were broken during this struggle.

At the conclusion of the evidence, the jury convicted Evans for rape, forcible sodomy, abduction with intent to defile, and assault and battery.  After the trial judge dismissed the jurors at the end of the trial, Evans's counsel asked for a bench conference.  Following the conference, the trial judge questioned a juror and asked if he "overheard or discussed anything with anybody during the trial."  The juror said he had "[n]ever discussed the case with anyone."  He recalled that a man said he was there for a trial and that he asked the man which trial.  The juror said he immediately walked away when the man said the Evans trial.

Weeks later, but before the sentencing hearing, Evans's counsel filed a motion for a new trial, alleging juror misconduct.  Attached to the motion is a document, which is styled "affidavit" and which recites, in pertinent part, as

- 3 -

follows:

1. On the second day of the trial, June 26, 2001, I was in front of the Courthouse during the lunch recess. I was approached by a well-dressed, bald, African-American man who began to speak to me.

2. I do not remember the exact words he said, but the substance of his statements were as follows:

A. He was there to watch the trial of his nephew.
B. He hoped they gave his nephew forty years.
C. His nephew "thinks he's slick."
D. He was only coming to the trial to support his sister-in-law.
E. His nephew was always in trouble.
F. His nephew had been in this kind of trouble before.

3. I asked the man which trial he was talking about and he said "Roland Evans."

4. When I realized he was talking about Roland Evans, I ended the conversation.

5. I did not realize he was speaking about Roland Evans until he specifically mentioned that he was speaking about Roland Evans.

6. I did not ask him any questions or continue speaking with him once I realized he had been speaking about Roland Evans.

The juror's signature is below the words, "I swear or affirm that the above statements are true to the best of my recollection." An investigator for the Public Defender's Office, C.E. Nelson, signed the document next to the words "witnessed by."

The prosecutor filed a response to the motion and attached to it a document from the same juror. This document is also styled, "affidavit," and recites, in pertinent part, the following:

> 1. After the trial, on two occasions, a man named Clarence Nelson came to see me. From what he said to me, I assumed he was with the Commonwealth Attorney's office.
>
> 2. I told him about the man who talked to me outside of the Courthouse.
>
> 3. That man told me that someone related to him was on trial, but I don't remember the exact relation. I seem to recall that it was his nephew or cousin, or a similar relation.
>
> 4. That man told me that he was there to support his wife.
>
> 5. When the man told me that he was there about the Evans case, I walked away.
>
> 6. That man did not say anything about the relative being in trouble before. He also did not say anything about him being in that kind of trouble before.
>
> 7. I did not notice those statements on the paper Clarence Nelson had, or I would not have signed it. I did not read his paper carefully. I did not tell him what to put in that paper, he had it written before he came to see me.
>
> 8. I did not receive any information that could have or that did affect my opinion about the case.

- 5 -

The juror's signature follows the words, "I swear the above statements are true."  A detective signed next to the words, "witnessed by."

The trial judge denied Evans's request for an evidentiary hearing and heard arguments on the motion for a new trial. Referring to the juror's oral statement at the conclusion of trial and the juror's statement attached to the Commonwealth's response, the trial judge said the juror's "first statement and his last statement were correct."  The trial judge then said he "would accept those and find as a fact that there was no other conversation between [the juror and Evans's uncle]."  Referring to the juror's statement which accompanied Evans's motion, the trial judge said even if "these facts are correct," he would find them insufficient to grant the motion for a new trial.  The trial judge also accepted as a proffer of evidence a sworn, three-page affidavit from Nelson, which detailed the events surrounding the securing of the juror's statement that accompanied Evans's motion for a new trial.  That affidavit contradicted in significant part two of the juror's other statements.  The trial judge denied Evans's motion for a new trial.

Evans contends the trial judge erred in sustaining the Commonwealth's objection to Jill Brown's testimony at trial. The Commonwealth contends that Evans cannot challenge the trial judge's ruling because his counsel failed to make a proper proffer of the testimony excluded. We agree that the necessary proffer was not made.

Evans testified at trial that, a day and a half before the struggle in Williams's apartment, he and Brown were on a highway near Williams's apartment. As he approached an exit near the apartment, he asked for Brown's cellular phone to place a call because he had to "stop and get some money from somebody." He did not testify that he identified that person to Brown. Later, on direct examination, Brown testified that Evans had made a statement to her in the car as they neared that highway exit. When Evans's counsel asked Brown what Evans said, the prosecutor objected on the ground that Evans's statement was an inadmissible prior consistent statement. Evans's counsel responded that Brown's recitation of Evans's statement was admissible under the state of mind exception. The trial judge sustained the prosecutor's objection.

"[W]hen testimony is rejected before it is delivered, an appellate court has no basis for adjudication unless the record reflects a proper proffer." Whittaker v. Commonwealth, 217 Va. 966, 968, 234 S.E.2d 79, 81 (1977). A proper proffer may consist of "a unilateral avowal of counsel, if unchallenged, or a mutual stipulation of the testimony expected." Id. at 969, 234 S.E.2d at 81. The purpose for the proffer "is to assure that the record

will be complete." Lowery v. Commonwealth, 9 Va. App. 304, 308, 387 S.E.2d 508, 510 (1990). In the absence of an acquiescence or stipulation, we have held, in circumstances such as in this case, that we will not consider the error assigned to the rejection of the testimony unless it has been given in the absence of the jury and made a part of the record. Whittaker, 217 Va. at 969, 234 S.E.2d at 81.

Evans argues that we can expect Brown's testimony to mirror Evans's testimony. That, however, is a matter we cannot assume and is precisely why a proffer is required. Clearly, Evans's counsel's statement to the trial judge that "[Brown's testimony] goes to the state of mind" is not sufficient to proffer the substance of Brown's testimony; that statement was given in response to the adequacy of the Commonwealth's objection and was not an avoval of the substance of Brown's testimony. We hold, therefore, the record is insufficient to determine whether the trial judge erred in sustaining the prosecutor's objection.

### III.

The rule is now well established that "private communications, possibly prejudicial, between jurors and third parties, are forbidden and invalidate the verdict unless their harmlessness is made to appear." Dozier v. Morrisette, 198 Va. 37, 40, 92 S.E.2d 366, 368 (1956). "In considering a motion to set aside when juror misconduct is alleged, the trial court has the affirmative duty 'to investigate the charges and to ascertain whether or not, as a matter of fact, the jury was guilty of such misconduct.'" Commercial Union Ins. Co. v. Moorefield, 231 Va. 260, 265, 343 S.E.2d 329, 332 (1986) (quoting Kearns v. Hall, 197

Va. 736, 743, 91 S.E.2d 648, 653 (1956)).

Although the Supreme Court has held that "hearsay affidavits are not admissible in support of a motion for a new trial," Moorefield, 231 Va. at 265, 343 S.E.2d at 333, the Court also has noted that, "[n]evertheless, such an affidavit may be sufficient to require the trial court to investigate the matters recited in the document." See also Evans-Smith v. Commonwealth, 5 Va. App. 188, 207, 361 S.E.2d 436, 447 (1987). In conducting such an investigation, the trial judge may summon jurors and persons knowledgeable of the events to be "sworn in open court and duly examined by the court and counsel as to what had transpired." Dozier, 198 Va. at 40, 92 S.E.2d at 368.

In deciding whether to order a new trial, the judge must be mindful of the following:

> A juror may not properly receive any information about a case he is hearing except in open court and in the manner provided by law. The reception of any evidence by the jury, especially in a criminal case, in addition to that produced at trial is ground for setting aside the verdict whenever there is sufficient ground to believe that . . . an accused in a criminal case, has been prejudiced by receipt of the information. And the test in a criminal case "is not whether the jurors were actually prejudiced by the extraneous matter, but whether they might have been so prejudiced. If they might have been prejudiced, then the purity of the verdict is open to serious doubt and the verdict should be set aside and a new trial awarded."

Brittle v. Commonwealth, 222 Va. 518, 522, 281 S.E.2d 889, 890 (1981) (citations omitted). Although "a motion for a new trial on the ground of juror misconduct is addressed to the sound

- 9 -

discretion of the trial judge," Moorefield, 231 Va. at 265, 343 S.E.2d at 332, the Supreme Court long ago held that this principle must be applied "with the added caution that only slight evidence of influence or prejudice as a result of such misconduct of a juror should be required to warrant the granting of a new trial." Hickerson v. Burner, 186 Va. 66, 72, 41 S.E.2d 451, 454 (1947). Against the background of these principles, we must determine whether, as Evans contends, the trial judge erred in denying his motion for an evidentiary hearing to enable him to prove juror misconduct that would merit a new trial.

In denying Evans's motion, the trial judge relied upon three pieces of evidence: the juror's unsworn oral statement at the end of the trial concerning the event, the juror's written statement to Evans's investigator that suggests the occurrence of improper communication, and the juror's further written statement to the detective that contradicts in part his previous written statement. We note that neither of the two written statements from the juror was an "affidavit," as that term is commonly used. An affidavit is a declaration in writing made by a person under oath and administered before a person authorized by law. Farm Bureau Mut. Ins. Co. v. Hammer, 83 F. Supp. 383, 385 (W.D. Va.), rev'd on other grounds sub nom. Farm Bureau Mut. Auto. Ins. Co. v. Hammer, 177 F.2d 793 (4th Cir. 1949). See also Huff v. Commonwealth, 213 Va. 710, 711-12, 194 S.E.2d 690, 692 (1973); Hawkins v. Gibson, 28 Va. (1 Leigh) 476, 480 (1829); Code § 49-4 and § 49-5; Black's Law Dictionary 58 (7th ed. 1999). Furthermore, the record indicates that Nelson's three-page affidavit was proffered as an exhibit, was sworn, and

contains a detailed narrative of his meeting with the juror, which contradicts parts of the statement the juror gave the detective. After hearing oral argument by counsel, the trial judge ruled that "the statements submitted by [Evans's counsel] were incorrect." The trial judge also ruled, however, that even if Evans's allegation of misconduct was correct, he would still find the conduct insufficient as to require a new trial.

Initially, we hold that the case decisions are contrary to the trial judge's alternative ruling that, even if the events occurred as Evans alleged, those facts provide an insufficient basis for a new trial. A juror may not properly receive any information about a case he is hearing except in open court and in the manner provided by law. Brittle, 222 Va. at 522, 281 S.E.2d at 890. When a juror, "especially in a criminal case," receives extraneous evidence, that circumstance "is ground for setting aside the verdict whenever there is sufficient ground to believe that . . . an accused in a criminal case has been prejudiced by receipt of the information." Id.

Both of the juror's written statements revealed more facts than disclosed by the juror at the close of trial. One of the juror's statements indicates that Evans's uncle revealed to him inappropriate information about Evans. Specifically, that statement indicates the uncle said that Evans thinks he's slick, that Evans was always in trouble, that Evans has been in this kind of trouble before, and that he hoped the jury gave Evans forty years. If the juror's statement is correct, then the juror received information about matters not evidence in the trial and not properly introduced in an open court. This information is

highly prejudicial to Evans because it suggests that Evans is someone capable of committing the crimes charged, that he has the propensity to commit these types of crimes, and that Evans's own uncle thought he was guilty. At the very least, a verdict under these circumstances is open to doubts. See Thompson v. Commonwealth, 193 Va. 704, 715, 70 S.E.2d 284, 290 (1952).

We further hold that the trial judge failed to satisfy his affirmative duty to adequately investigate the juror misconduct allegation when he denied Evans's motion for a new trial without first conducting an evidentiary hearing. When the trial judge questioned the juror at the end of the trial, he asked the juror whether the juror "overheard anything or discussed anything with anybody." The juror's response was a brief denial of any contact of substance with the man. When the juror's written statements were later presented to the trial judge, the nature of the contact, however, was disclosed to be different. Because the two written statements conflict with each other and also with the juror's oral statement, the trial judge was no longer investigating a naked allegation of juror misconduct. He had a basis to believe several conflicting sets of facts eminated from this juror, one of which supported the misconduct allegation. In addition, the trial judge had a proffer in the form of an affidavit from an investigator attesting to the circumstances surrounding the statement the juror gave him and contradicting, in part, one of the juror's statements.

We do not know from competent evidence in the record what actually transpired. But the trial judge should not have dismissed Evans's motion without first conducting an adequate

investigation upon evidence properly presented at a hearing.  The juror's statements and Nelson's affidavit were sufficient to warrant an evidentiary hearing.  Therefore, we reverse and remand for an evidentiary hearing and for a determination on proper evidence whether sufficient misconduct occurred to warrant the setting aside of the jury verdict "and for such proceedings thereafter as may be necessary and proper."  <u>Kearns</u>, 197 Va. at 745, 91 S.E.2d at 654.

<u>Reversed and remanded</u>.