COURT OF APPEALS OF VIRGINIA

Present: Judges Alston, Chafin and Senior Judge Haley
Argued at Fredericksburg, Virginia


LARONN J. RAMSUER

v.      Record No. 1122-16-4

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE TERESA M. CHAFIN
DECEMBER 12, 2017


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Penney S. Azcarate, Judge

Bryan T. Kennedy, Assistant Public Defender, for appellant.

John I. Jones, IV, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


At the conclusion of a jury trial, Laronn J. Ramsuer ("appellant") was convicted of rape,

sodomy, and abduction with intent to defile. Appellant received an enhanced punishment on

each charge pursuant to Code § 18.2-67.5:2 due to a prior conviction for aggravated sexual

battery. On appeal, appellant maintains that the trial court erred by finding that there was sufficient

evidence to establish that he was "at liberty" under Code § 18.2-67.5:2. Appellant also contends

that the trial court erred by refusing to summons a juror to testify about the consideration of

impermissible evidence in jury deliberations. Finally, appellant contends that the trial court erred by

not granting him a new trial based on the jury's consideration of impermissible extrinsic evidence.

Finding no error, we affirm appellant's convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Background

On appellate review, we consider the evidence presented at trial in the light most favorable to the Commonwealth, the prevailing party below, and "accord [it] the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). So viewed, the evidence is as follows.

On August 17, 2014, S.C. visited appellant at his home. Around midnight, appellant and S.C. walked down a small dark pathway through a wooded area to a convenience store. As they returned on the same path, appellant walked behind S.C. and placed a knife to her throat. He then raped and sodomized her.

At appellant's trial, the Commonwealth introduced recordings of phone calls that appellant made to his mother from jail. These recordings were played for the jury. In the recordings, appellant told his mother that he had been charged with "the same thing as in 2009," referencing his 2009 conviction for aggravated sexual battery. He also told her that he had "admitted it to the detective." During the calls, appellant named S.C. as the victim and confessed that he and S.C. were both intoxicated at the time of the incident. His mother asked on the third phone call, "[d]id she participate a little and then say, 'Stop?'" Appellant responded, "No." In one of the calls, he told his mother to "stop trying to find loopholes and stuff. I did this shit." He ended that conversation with, "They record my calls."

The Commonwealth also introduced evidence pertaining to appellant's court-ordered supervision, stemming from his prior aggravated sexual battery conviction. Angela Morris, a probation and parole officer, testified that she supervised appellant's postrelease supervision from January 8, 2014 until his arrest in August 2014 for the assault of S.C. She testified that she monitored individuals on probation, parole, and postrelease supervision. Morris stated that people on all three forms of conditional release must comply with terms ordered by both her and

the court and that suspended time enforced compliance with those terms. Morris confirmed that in August of 2014, appellant was not in custody, but he was under her supervision.

At the close of the Commonwealth's evidence, appellant moved to strike the evidence supporting sentence enhancements under Code § 18.2-67.5:2. He argued that "postrelease supervision" is not included in the definition of "at liberty" under the statute. Thus, he contended that the Commonwealth failed to prove he was "at liberty" when the offense was committed. The trial court ultimately denied the motion, citing the similarities between postrelease supervision and probation and the fact that postrelease supervision did not exist in 1993, the year the section containing the definition of "at liberty" was last amended. The trial court found that postrelease supervision "throughout the Code is treated similar to probation and would fall under the probation umbrella of the statute."

The trial court instructed the jury that "[a]t liberty includes not only freedom without any legal restraints, but shall also include release pending trial, sentencing or appeal, or release on probation or parole or escape," following the language of Code § 53.1-151. After deliberations, the jury convicted appellant on all charges, including the sentence enhancement factors. The jury fixed appellant's punishment at confinement for life on each count.

In a post-trial motion, appellant moved to summons a juror to testify about alleged misconduct. He also requested a new trial on this basis. Appellant proffered that "several jurors stated that they could not hear the [jail] calls [played during the trial and admitted into evidence without limitation] well and could not hear exactly the words used." He further proffered that a juror had "changed the [audio] settings [on the computer provided to play the jail calls] so that [the jury] could hear what they believed to be one participant['s] words, and then the other in turn," and that "[t]he jury also listened to the calls without this manipulation." Appellant argued that this transformed the jail calls into extraneous evidence not admitted at trial.

The trial court rejected appellant's post-trial motion, convicted appellant of the charged offenses, and imposed the sentence fixed by the jury. This appeal followed.

Analysis

On appeal, appellant argues that the statutory definition of "at liberty" does not include postrelease supervision. He further argues that the trial court erred by refusing to summons a juror to testify about the consideration of impermissible evidence in jury deliberations. Finally, he contends that the trial court erred by not granting him a new trial based on the jury's consideration of impermissible extrinsic evidence. For the reasons that follow, we affirm the decision of the trial court.

I. Definition of "At Liberty" as Used in Code § 53.1-151

Appellant contends that the evidence presented at trial was insufficient to establish that he was "at liberty" under Code § 18.2-67.5:2 when he abducted, raped, and sodomized S.C. As appellant's argument requires us to interpret the definition of "at liberty" contained in Code § 18.2-67.5:2 and other statutes, it presents a pure question of law, subject to *de novo* review. See Boynton v. Kilgore, 271 Va. 220, 227, 623 S.E.2d 922, 925 (2006).

> When interpreting statutes, courts ascertain and give effect to the intention of the legislature. That intent is usually self-evident from the words used in the statute. Consequently, courts apply the plain language of a statute unless the terms are ambiguous, or applying the plain language would lead to an absurd result.

Id. at 227, 623 S.E.2d at 925-26 (internal quotations and citations omitted).

Code § 18.2-67.5:2 requires a court to impose enhanced penalties in certain situations. Code § 18.2-67.5:2 dictates that the sentence imposed for certain sex crimes be the maximum authorized by statute for anyone who commits an enumerated sex crime, becomes "at liberty as defined in [Code] § 53.1-151," and proceeds to commit another enumerated sex crime while at liberty. See Code § 18.2-67.5:2.

Appellant contends that "postrelease supervision" is excluded from the definition of "at liberty" because it is not specifically enumerated in Code § 53.1-151. Code § 53.1-151 provides, in pertinent part, that "'[a]t liberty'. . . shall include not only freedom without any legal restraints, but shall also include release pending trial, sentencing or appeal, or release on probation or parole or escape."

Appellant argues that Code § 53.1-151 provides an exhaustive list of the circumstances under which an individual is "at liberty." This interpretation, however, ignores the plain language of the statute. By specifying "at liberty" *includes* certain situations, the statute implies that the condition of being "at liberty" is not limited to these situations. See Code § 1-218 ("'Includes' means includes, but not limited to.").

The term "at liberty," as used in Code § 53.1-151, includes many degrees of legal restraint. Each listed status – probation, parole, and escape – involves a lack of actual incarceration combined with a continuing duty to the criminal justice system. Reading this list as exhaustive and excluding postrelease supervision under Code § 19.2-295.2 would lead to an absurd result.

Postrelease supervision was fashioned to fill a hole that was left following the abolition of parole in Virginia.[1]

> Prior to the abolition of parole, a felon who was paroled from prison into the community would be under the supervision of parole authorities for a specified period of time. See Code § 53.1-159. The obvious purpose of both the amendment to Code § 18.2-10 and Code § 19.2-295.2 is to provide for a period of at least six months' supervision after parole was abolished for felons upon their release from active incarceration. Except for Code §§ 18.2-10 (1995 amendment) and 19.2-295.2, a felon who would

---

[1] Code § 53.1-151, the parole eligibility statute, was last amended in 1993. Postrelease supervision did not come into existence until 1995. This timeline together with the fact that parole has been abolished and its function has been filled by postrelease supervision, are plausible practical reasons for postrelease supervision's omission from the conditions explicitly enumerated in the parole eligibility statute.

have served a term of incarceration after the abolition of parole, perhaps a lengthy term, would have been released into the community without any supervision.

Lamb v. Commonwealth, 40 Va. App. 52, 57, 577 S.E.2d 530, 532 (2003). Postrelease supervision provides recently released offenders with supervision and a chance to gradually transition into society. See Alston v. Commonwealth, 49 Va. App. 115, 124, 637 S.E.2d 344, 348 (2006), aff'd, 274 Va. 759, 652 S.E.2d 456 (2007).

No meaningful difference exists between the legal restraint inherent in postrelease supervision, probation, or parole. All three programs are administered through the same probation and parole districts. Code §§ 19.2-295.2(C) and 53.1-145. Probation and parole officers exercise the same authority over their charges whether they are on postrelease supervision, probation, or parole. As with probation and parole, the violation of the terms of postrelease supervision could result in the revocation of an underlying suspended sentence. In light of the similarities between postrelease supervision, probation and parole, we conclude that the General Assembly did not intend for postrelease supervision to be excluded from the definition of "at liberty" as used in Code § 53.1-151.

Appellant concedes that he was on postrelease supervision at the time he committed the offenses at issue in this case. Nonetheless, he contends that the Commonwealth's evidence was insufficient to support a finding that he was "at liberty" under Code § 18.2-67.5:2.

The jury was instructed on the definition of "at liberty,"[2] and heard evidence regarding the nature of postrelease supervision in the context of the sentencing statute. The jury found that appellant was "at liberty" when he abducted, raped, and sodomized S.C. "When a jury decides the case, Code § 8.01-680 requires that 'we review the jury's decision to see if reasonable jurors

---

[2] Jury Instruction No. 15 stated, "At liberty includes not only freedom without any legal restraints, but shall also include release pending trial, sentencing or appeal, or release on probation or parole or escape.

could have made the choices that the jury did make. We let the decision stand unless we conclude no rational juror could have reached that decision.'" Crowder v. Commonwealth, 41 Va. App. 658, 662, 588 S.E.2d 384, 386 (2003) (quoting Pease v. Commonwealth, 39 Va. App. 342, 355, 573 S.E.2d 272, 278 (2002) (*en banc*)). In this case, the jury's decision was supported by the evidence and did not conflict with the plain language of the statute. Therefore, the trial court did not err in finding that appellant was "at liberty" when he committed the offenses at issue.

## II. Alleged Juror Misconduct

Appellant argues that because the sound settings were altered when the jury was considering the jail calls between appellant and his mother, the jury heard the calls in a way not presented at trial. On appeal, appellant contends that the trial court erred in refusing to summons jurors so the court could determine if and to what extent misconduct occurred and what prejudice may have arisen from that misconduct. Appellant also challenges the trial court's denial of his motion for a new trial based on his proffer of juror misconduct.

### A. *Summonsing of a Juror*

Appellant argues that the trial court erred in refusing to summons jurors so the court could determine if and to what extent misconduct occurred and what prejudice may have arisen from that misconduct. We disagree.

> Whether a trial court should examine jurors is a matter addressed to the court's sound discretion, and, absent an abuse of discretion, its decision will not be disturbed on appeal. Moreover, unless there is a substantial reason to believe that juror misconduct has occurred, a court may decline to question the other jurors in that regard.

Harris v. Commonwealth, 13 Va. App. 47, 51, 408 S.E.2d 599, 600 (1991) (quoting Bradshaw v. Commonwealth, 228 Va. 484, 491, 323 S.E.2d 567, 571 (1984)). Similarly, "[i]n considering a motion to set aside when juror misconduct is alleged, the trial court has the affirmative duty to

investigate the charges and to ascertain whether or not, as a matter of fact, the jury was guilty of such misconduct." Evans v. Commonwealth, 39 Va. App. 229, 237, 572 S.E.2d 481, 484 (2002) (internal citations omitted).

> Virginia has been more careful than most states to protect the inviolability and secrecy of jurors' deliberations. We have adhered strictly to the general rule that the testimony of jurors should not be received to impeach their verdict, especially on the ground of their own misconduct. . . . Moreover, the unanimous verdict is the best evidence of each juror's opinion of the case. We have recognized, however, that there may be exceptional cases where juror testimony might be admissible to impeach their verdict to prevent a miscarriage of justice. In such cases, that testimony should be received with great care and caution.

Harris, 13 Va. App. at 50, 408 S.E.2d at 600 (quoting Caterpillar Tractor Co. v. Hulvey, 233 Va. 77, 82, 353 S.E.2d 747, 750-51 (1987)). Rule of Evidence 2:606 provides that jurors are "precluded from testifying as to any matter or statement occurring during the course of the jury's deliberations" and that "[a] juror may testify only as to questions regarding extraneous prejudicial information improperly brought to the jury's attention as a result of conduct outside the jury room, or whether any improper influence was brought to bear upon any juror from a source outside the jury room."

Appellant argues that Evans required the trial court to summons a juror to testify about the alleged misconduct. Evans is distinguishable from this case. Evans involved proffered juror testimony about purported third-party influence that was undoubtedly extraneous and prejudicial. Evans, 39 Va. App. at 239, 572 S.E.2d at 486 (Evans's uncle told a juror that Evans "was always in trouble, . . . ha[d] been in this kind of trouble before" and that he hoped the jury "gave [Evans] forty years."). However, appellant seeks to introduce evidence about events that occurred during deliberations between the jurors themselves.

Appellant has not proffered that the jury heard information that is extraneous or prejudicial. His proffer merely concerned the jurors' altering the sound setting while they

listened to jail calls that were admitted into evidence and published to the jury without objection or limitation.

The adjustment of sound settings did not make the jail calls extraneous. As stated by the trial court in ruling on appellant's motion,

> I think [appellant] misuses the word "alter" by rearranging the sound on the laptop so that they could hear the voices on the recording, is not making the recording different by any means. Doing so, also, would not amount to an alteration of the recordings since there is no change to the recordings.
>
> This would not be different if jurors were given a photo and then covered a portion of the photo to highlight one part of it or using a magnifying glass to view the photo. The jurors are just adjusting the manner in which they are being viewed, like with the recordings in this case.

Appellant cites no authority, and we cannot locate any, holding that adjusting sound or volume settings on a playback device in order to better hear an audio exhibit constitutes the consideration of extraneous evidence. At the most, the jurors listened carefully to the recording of the jail calls, which were admitted and published during the trial without limitation. Because appellant did not proffer anything that rises to the level of misconduct, he is not entitled to further inquiry into whether his proffer was factual.

*B. Refusal to Order a New Trial Based on Alleged Juror Misconduct.*

Appellant also challenges the trial court's denial of his motion for a new trial based on his proffer of juror misconduct, wherein jurors altered the sound settings of jail calls between appellant and his mother. In deciding whether to order a new trial, the trial court must be cognizant of the following:

> A juror may not properly receive any information about a case he is hearing except in open court and in the manner provided by law. The reception of any evidence by the jury, especially in a criminal case, in addition to that produced at trial is ground for setting aside the verdict whenever there is sufficient ground to believe that . . . an accused in a criminal case, has been prejudiced by receipt of the

information. And the test in a criminal case "is not whether the jurors were actually prejudiced by the extraneous matter, but whether they might have been so prejudiced. If they might have been prejudiced, then the purity of the verdict is open to serious doubt and the verdict should be set aside and a new trial awarded."

Evans, 39 Va. App. at 237, 572 S.E.2d at 485 (quoting Brittle v. Commonwealth, 222 Va. 518, 522, 281 S.E.2d 889, 890 (1981)). "[A] motion for a new trial on the ground of juror misconduct is addressed to the sound discretion of the trial judge." Id. at 237-38, 572 S.E.2d at 485 (quoting Commercial Union Ins. Co v. Moorefield, 231 Va. 260, 265, 343 S.E.2d 329, 332 (1986)). However, "this principle must be applied 'with the added caution that only slight evidence of influence or prejudice as a result of such misconduct of a juror should be required to warrant the granting of a new trial.'" Id. at 238, 572 S.E.2d at 485 (quoting Hickerson v. Burner, 186 Va. 66, 72, 41 S.E.2d 451, 454 (1947)). "The exercise of [a trial court's] discretion will not be disturbed on appeal in the absence of a clear abuse," and an abuse of discretion is only found "when reasonable jurists could not differ." Mayfield v. Commonwealth, 59 Va. App. 839, 849, 722 S.E.2d 689, 694 (2012) (internal quotation marks and citations omitted).

In this case, the trial court found that "rearranging the sound on the laptop so that [the jurors] could hear the voices on the recording" did not "amount to an alteration of the recordings." The jurors merely adjusted the manner in which the recordings were being heard. As presented in this record, we hold that it is clear that the evidence lacks a showing of even slight prejudice. Evans, 39 Va. App. at 237, 572 S.E.2d at 485. Thus, the trial court did not err in declining to set aside the verdict and declare a mistrial.

Conclusion

We conclude that the term "at liberty" as it is used in Code § 53.1-151, includes situations where individuals are placed on postrelease supervision. Therefore, the jury could conclude that appellant was "at liberty" when he abducted, raped, and sodomized S.C. Further,

- 10 -

appellant was not entitled to further investigation or a new trial based on his proffer of juror misconduct.  For these reasons, we affirm the judgment of the trial court.

<u>Affirmed</u>.