COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Beales and Alston
Argued at Chesapeake, Virginia


JARROD ANTONIO SPENCE

                                                      OPINION BY
v.      Record No. 1195-11-1                 JUDGE WILLIAM G. PETTY
                                                       JULY 10, 2012
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Bruce H. Kushner, Judge[1]

Carmelou G. Aloupas, Assistant Public Defender (Chesapeake
Public Defender's Office, on brief), for appellant.

Kathleen B. Martin, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


        Jarrod Antonio Spence appeals his convictions for two counts of robbery, Code

§ 18.2-58, one count of abduction, Code § 18.2-47, three counts of the use or display of a firearm

in the commission of a felony, Code § 18.2-53.1, and one count of unlawfully wearing a mask in

public, Code § 18.2-422.  Spence assigns the following errors to the judgment of the trial court:

(1) the trial court abused its discretion in denying Spence's motion for a mistrial after a particular

statement by one of the Commonwealth's witnesses; (2) the trial court erred in denying Spence's

motions to strike and upholding his convictions in accordance with the verdicts of the jury, as the

testimony and evidence at trial failed to prove that Spence was the perpetrator of the crimes in

question; and (3) the trial court erred in denying the public defender's motion to withdraw and to

relieve the entire Public Defender's Office from representing Spence, as Spence made a serious

_____

        [1] Judge Kushner presided over Spence's trial and subsequent proceedings.  Judge John
W. Brown presided at the pre-trial hearings regarding Spence's original counsel's motion to
withdraw and the Public Defender's Office's request to be relieved from representing Spence.

threat against a senior assistant public defender that should have been imputed to the entire office. For the reasons set forth below, we disagree with Spence's arguments and therefore affirm his convictions.

## I. BACKGROUND

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.'" Archer v. Commonwealth, 26 Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (quoting Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987)).

On March 2, 2010, a man wearing a mask entered a SuperMart in Chesapeake, pointed a gun at the store owner and the two employees who were present at the time, and told them to put their hands up. One of the employees ran to a back room, but the robber went and brought him back into the main room at gunpoint. The other employee gave the robber money out of both cash registers, in the approximate amount of $4,100 to $4,200. The surveillance camera photographs introduced into evidence show the robber wearing a dark, hooded jacket or sweatshirt of some type, with a tag or label on the lower left front side, as well as distinctively marked gloves. The photographs also show the robber pointing a dark handgun in various directions.

On the evening of March 11, 2010, the police received a call from the owner of the SuperMart regarding a suspicious car parked near his store.[2] Chesapeake Police Officer Timothy L. Donahue responded[3] and saw Spence in the vicinity of the SuperMart, in front of a nearby apartment complex between two large fern trees. When Officer Donahue first encountered

---

[2] Officer Bruce E. Ilapit, the first officer to arrive, testified that the store owner pointed out the location of the car to him.

[3] Although there was no testimony regarding the exact time of the police dispatch, the police photographs indicate that the events occurred after dark.

Spence, Spence was wearing a dark jacket, zipped up, with a knit cap on his head and the hood of his jacket pulled over his head. The jacket also had a tag or label on the lower left front side. Officer Donahue asked Spence how he got where he was, and Spence pointed to his car nearby. The car had obviously been parked there before it had started raining. After leaving Spence with Officer Bruce E. Ilapit by Spence's car, Officer Donahue walked back over to the trees in front of the apartment and found a pair of gloves and a handgun behind one of the trees. Officer Ilapit also subsequently went and saw the gloves and gun. Although Officer Ilapit acknowledged that he did not know how long the gloves and gun had been there, he did point out that they were dry and that it was raining outside. A third officer subsequently placed a nearby chair over the area where the gloves and gun were lying, in an effort to protect them, since he saw that it was drizzling rain at the time and that there was "a lot of water run-off coming off the roof [of the apartment building]." The police photographs show that the gloves and gun were lying on the ground in a haphazard fashion, as if someone had quickly or carelessly tossed them there.

Prior to trial, the senior assistant public defender who had been appointed to represent Spence moved to withdraw as counsel for Spence, and the trial court granted this motion, due to some type of threat that Spence had apparently made to this attorney.[4] The senior assistant public defender asked that the entire Chesapeake Public Defender's Office be relieved from representing Spence, and the trial court scheduled another hearing to have the public defender appear personally and argue why another attorney in her office could not represent Spence. After hearing argument from the public defender, the trial court took the matter under advisement. Two weeks later, the trial court issued a letter to counsel in which it re-appointed

---

[4] For purposes of this opinion we will assume that this threat created a conflict between Spence and the personal interest of the senior assistant public defender. See Virginia Rule of Professional Conduct 1.7(a)(2).

the Chesapeake Public Defender's Office for the public defender to assign the case to a different attorney.

At trial, the store owner testified that he could identify the robber by his height and voice, and he stated that Spence's height was "about the same" as the height of the robber. The owner also testified that the robber's eyes were not covered by the mask and that the robber was African-American. Furthermore, the DNA expert testified that based on her analysis of the gloves, Spence "could not be eliminated as a contributor to the DNA mixture profile developed from the gloves."[5] Significantly, the gloves had the same color and distinctive markings as the gloves worn by the robber. Likewise, the handgun was of a similar color and appearance to the handgun used by the robber.

During defense counsel's cross-examination of the store owner, the following exchange occurred:

| [Defense Counsel:] | So you don't know if it's this man wearing those gloves in that picture? |
|---|---|
| [Witness:] | Like I said, I could identify him by his height and his voice. |
| [Defense Counsel:] | But you don't know if it was this man wearing those gloves on that day, March 2, 2010, do you? |
| [Witness:] | Well, when they caught him the second time, he had the gloves on already. |

After this statement, defense counsel moved for a mistrial outside the presence of the jury, arguing that the store owner's statement indicated to the jury that Spence had committed a second offense. During the discussion accompanying this motion, the trial court proposed the idea of instructing the jury to disregard the store owner's statement. Defense counsel expressed

---

[5] A "DNA mixture profile" denotes the presence of at least two contributors to the DNA found in a particular area.

his appreciation for the trial court's "willingness to caution the jury," yet reiterated his motion for a mistrial. The trial court denied his motion.

Subsequently, after conversing with the witness and conferring further with counsel, the trial court decided to permit counsel for the Commonwealth "to make further inquiry to allow [the store owner] to clarify his testimony." Once the jury returned, the following exchange took place:

| | |
|---|---|
| [Commonwealth:] | [W]hen you talked about the second time, were you talking about a second time when you thought you saw the guy that robbed this store? |
| [Witness:] | Yes. |
| [Commonwealth:] | So the first time, March 2, the day of the robbery, the second time about a week or so later? |
| [Witness:] | A week later. Maybe a little bit les [sic]. |
| [Commonwealth:] | Did you call the police? |
| [Witness:] | Yes. |
| [Commonwealth:] | And did you see the police come? |
| [Witness:] | Yes. |
| [Commonwealth:] | Did you see the police take someone into custody? |
| [Witness:] | Yes. |

The store owner also clarified that he did not actually see the person the police took into custody on March 11, acknowledging that "[h]e was far away." The trial court did not give the jury any special instruction regarding the store owner's earlier statement.

Later in the trial, defense counsel renewed his motion for a mistrial and asked the trial court "to consider again a cautionary instruction to the jury." The judge acknowledged, "I

initially was inclined to offer a cautionary instruction to the jury." However, the judge

proceeded to state:

> After hearing additional examination of [the store owner], I felt
> that I would draw attention to something that did not deserve
> attention to be drawn to and would, perhaps, create a greater
> problem than it cured. I don't think there has been any indication
> to this jury that there was another offense that was committed, but
> rather, a second day that [the store owner] saw Mr. Spence, or in
> his mind saw Mr. Spence a second time, not the date of a second
> robbery or second criminal action by Mr. Spence.

Accordingly, the trial court concluded that neither a mistrial nor a cautionary instruction

was appropriate. The judge reasoned:

> I believe that a cautionary instruction would draw attention to
> something that doesn't deserve attention being drawn to and would
> be to the detriment, quite frankly, of Mr. Spence because it might
> imply to the jury that there's something they need to think about,
> was there a prior offense, was there another crime that was
> committed by this defendant, and thereby prejudice this jury
> against Mr. Spence.

Spence was convicted of two counts of robbery, one count of abduction, three counts of

the use or display of a firearm in the commission of a felony, and one count of unlawfully

wearing a mask in public. He was sentenced to a total of seventy-six years imprisonment with

eleven years suspended. This appeal followed.

## II. ANALYSIS

### A. Motion for Mistrial

Spence first argues that the trial court abused its discretion in denying his motion for a

mistrial. We find no error in the trial court's ruling.

The standard for reviewing a trial court's ruling on a motion for a mistrial is well

established:

> "The decision whether to grant a motion for mistrial lies within a
> trial court's exercise of discretion. When a motion for mistrial is
> made, based upon an allegedly prejudicial event, the trial court

must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so indelibly prejudiced as to necessitate a new trial. Unless we can say that the trial court's determination was wrong as a matter of law, we will not disturb its judgment on appeal."

Blanton v. Commonwealth, 280 Va. 447, 455, 699 S.E.2d 279, 284 (2010) (quoting Green v. Commonwealth, 266 Va. 81, 102, 580 S.E.2d 834, 846 (2003)).

During defense counsel's cross-examination of the store owner, the owner stated that "when they caught him the second time, he had the gloves on already." Spence contends that this statement constituted inadmissible evidence of a separate crime. According to Spence, this statement suggested to the jury that Spence had committed and was caught for a second robbery. However, as the trial court noted, the store owner's statement about Spence being caught "the second time" did not necessarily imply that Spence had committed another crime. After conversing with the witness outside the presence of the jury and conferring with counsel, the trial court decided to permit counsel for the Commonwealth to ask the store owner follow-up questions in the presence of the jury to clarify his testimony. Accordingly, the prosecutor asked the owner, "[W]hen you talked about the second time, were you talking about a second time when you thought you saw the guy that robbed this store?" The owner responded, "Yes." The prosecutor asked, "So the first time, March 2, the day of the robbery, the second time about a week or so later?" The store owner replied, "A week later. Maybe a little bit les [sic]."

This clarification of the store owner's testimony was sufficient to remove any ambiguity in his earlier testimony that the jury might conceivably have interpreted as referring to criminal conduct on another occasion. In light of this clarification, we certainly cannot say that the trial court erred as a matter of law in failing to find that Spence's rights were "'so indelibly prejudiced as to necessitate a new trial.'" See Blanton, 280 Va. at 455, 699 S.E.2d at 284

(quoting Green, 266 Va. at 102, 580 S.E.2d at 846). Accordingly, the trial court did not abuse its discretion in denying Spence's motion for a mistrial.

Additionally, Spence argues that the trial court erred in failing to give a cautionary instruction to the jury to disregard the store owner's statement. "The decision whether to give a cautionary instruction is a matter lying within the trial court's discretion and will not be disturbed on appeal unless the record shows an abuse of discretion." Goins v. Commonwealth, 251 Va. 442, 465, 470 S.E.2d 114, 129 (1996) (citing Johnson v. Commonwealth, 2 Va. App. 598, 605, 347 S.E.2d 163, 167 (1986)); see also Smith v. Commonwealth, 239 Va. 243, 267, 389 S.E.2d 871, 884 (1990) (holding that "the trial court did not abuse its discretion in denying [a] motion for mistrial or in failing to instruct the jury to disregard [an improper statement by the prosecutor during closing argument]").

Here, the trial court did not abuse its discretion in denying defense counsel's request for a cautionary instruction. Before talking with the store owner, the trial court itself had proposed the idea of instructing the jury to disregard the owner's statement. Defense counsel expressed his appreciation for the trial court's "willingness to caution the jury." However, after interacting with the witness and conferring further with counsel, the trial court decided to permit counsel for the Commonwealth "to make further inquiry to allow [the store owner] to clarify his testimony." When defense counsel brought up the issue of a cautionary instruction again later in the trial, the judge explained that in light of the follow-up testimony from the store owner, he felt that a cautionary instruction to the jury regarding the store owner's earlier statement would perhaps engender more prejudice than it would prevent. The trial court did not believe that the store owner's testimony indicated to the jury "that there was another offense that was committed, but rather, a second day that [the owner] saw Mr. Spence, or in his mind saw Mr. Spence a second time, not the date of a second robbery or second criminal action by Mr. Spence." Because the

- 8 -

store owner's testimony did not clearly communicate to the jury the idea that Spence had committed other criminal acts, the trial court was within its discretion when it decided not to draw further attention to the owner's particular statement and thereby risk creating unnecessary prejudice against Spence.

### B. Motions To Strike

Spence next argues that the trial court erred in denying his motions to strike and upholding his convictions in accordance with the verdicts of the jury. Spence contends that none of the witnesses identified him as the perpetrator of the robbery, as having been in possession of a firearm, or as having worn a mask, and he points out that the DNA testing indicated the presence of more than one person's DNA on the gloves worn by the robber. We hold that the evidence was sufficient to support Spence's convictions.

"'When reviewing the sufficiency of the evidence to support a conviction, [this] Court will affirm the judgment unless the judgment is plainly wrong or without evidence to support it.'" Mayfield v. Commonwealth, 59 Va. App. 839, 850, 722 S.E.2d 689, 695 (2012) (alteration in original) (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)). In our review, we have "a duty to examine all the evidence that tends to support the conviction." Bolden, 275 Va. at 147, 654 S.E.2d at 586. Accordingly, "[w]e 'must discard all evidence of the accused that conflicts with that of the Commonwealth and regard as true all credible evidence favorable to the Commonwealth and all fair inferences reasonably deducible therefrom.'" Holcomb v. Commonwealth, 58 Va. App. 339, 346, 709 S.E.2d 711, 714 (2011) (quoting Lea v. Commonwealth, 16 Va. App. 300, 303, 429 S.E.2d 477, 479 (1993)).

Moreover, "[a]n appellate court does not 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" Williams v. Commonwealth, 278 Va. 190, 193, 677 S.E.2d 280, 282 (2009) (emphasis in original) (quoting Jackson v. Virginia, 443

U.S. 307, 318-19 (1979)).  "Rather, the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Id. (emphasis in original) (quoting Jackson, 443 U.S. at 319).  "'This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010) (quoting Jackson, 443 U.S. at 319).

It is also well established that "[c]ircumstantial evidence, if convincing, is entitled to the same weight as direct testimony."  Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008); accord Riner v. Commonwealth, 268 Va. 296, 303, 601 S.E.2d 555, 558 (2004). Furthermore, "'[w]hile no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'"  Dowden v. Commonwealth, 260 Va. 459, 470, 536 S.E.2d 437, 443 (2000) (quoting Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979)).

With these principles in mind, we turn to consider the evidence in this case.  Although no witness was able to identify Spence by facial recognition, as the robber was wearing a mask during the robbery, the surveillance camera photographs show the robber wearing a dark, hooded jacket or sweatshirt of some type, with a tag or label on the lower left front side, as well as distinctively marked gloves.  The photographs also show the robber pointing a dark handgun in various directions.  The store owner testified that he could identify the robber by his height and voice, and he stated that Spence's height was "about the same" as the height of the robber.  He also testified that the robber's eyes were not covered by the mask and that the robber was African-American, as is Spence.

When Officer Donahue saw Spence in the vicinity of the SuperMart nine days after the robbery, Spence was in front of a nearby apartment complex between two large fern trees. When Officer Donahue first encountered Spence, Spence was wearing a dark jacket, zipped up, with a knit cap on his head and the hood of his jacket pulled over his head. The jacket also had a tag or label on the lower left front side. Behind one of the two trees in front of the apartment complex, Officer Donahue discovered a pair of gloves and a handgun lying on the ground in a haphazard fashion, as if someone had quickly or carelessly tossed them there. Furthermore, the fact that the gloves and gun were dry even though it was raining outside indicates that they had been tossed there very recently. Spence's DNA profile was consistent with that found on the gloves. Significantly, the gloves had the same color and distinctive markings as the gloves worn by the robber. Likewise, the handgun was of a similar color and appearance to the handgun used by the robber.

In light of this evidence, we cannot say that the conclusion of the jury that Spence was the person who robbed the SuperMart on March 2, 2010 was plainly wrong or without evidence to support it. "'[Giving] full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts,'" Brown, 56 Va. App. at 185, 692 S.E.2d at 274 (quoting Jackson, 443 U.S. at 319), we conclude that a "'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,'" Williams, 278 Va. at 193, 677 S.E.2d at 282 (quoting Jackson, 443 U.S. at 319). Thus, we hold that the trial court did not err in denying Spence's motions to strike and upholding his convictions in accordance with the verdicts of the jury.

### C. Motion To Withdraw

Finally, Spence argues that the trial court erred in denying the public defender's motion to withdraw and to relieve the entire Public Defender's Office from representing Spence. Spence

contends that he was denied his Sixth Amendment right to effective assistance of counsel because of a conflict of interest that he contends applied to every attorney in the Public Defender's Office.[6] We disagree.

"Motions for counsel to be permitted to withdraw . . . are addressed to the sound discretion of the trial court." Payne v. Commonwealth, 233 Va. 460, 473, 357 S.E.2d 500, 508 (1987). The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. As the United States Supreme Court has recognized, "'the right to counsel is the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). Furthermore, the Court has explained that a defendant's Sixth Amendment rights are violated by "an actual conflict of interest [that] adversely affect[s] his lawyer's performance." Cuyler v. Sullivan, 446 U.S. 335, 350 (1980); see also Mickens v. Taylor, 535 U.S. 162, 172 n.5 (2002) ("An 'actual conflict,' for Sixth Amendment purposes, is a conflict of interest that adversely affects counsel's performance."). In Mickens, the Supreme Court expressly rejected the argument that a defendant "need only show that his lawyer was subject to a conflict of interest, and need not show that the conflict adversely affected counsel's performance." 535 U.S. at 170. Instead, the Court held that "'an actual conflict of interest' mean[s] precisely a conflict *that affected counsel's performance*—as opposed to a mere theoretical division of loyalties." Id. at 171 (emphasis in original). In sum, "the Sullivan standard . . . requires proof of effect upon representation." Id. at 173.

---

[6] To the extent Spence argues that we should reverse his convictions based simply on an alleged failure to comply with Virginia Rule of Professional Conduct 1.10, we find no merit in such a contention. A violation of a particular rule of professional conduct does not *ipso facto* require reversal of a criminal conviction. Rather, we will devote our attention to Spence's constitutional claim that his Sixth Amendment right was violated.

In light of the foregoing principles, we hold that the trial court did not abuse its discretion in denying the public defender's request to relieve the entire Public Defender's Office from representing Spence. There was no evidence presented to the trial court at the pretrial hearing that demonstrated something beyond a mere theoretical concern that another attorney's performance *might* be affected by his knowledge of Spence's threat to his previous attorney.[7] Thus, the Sixth Amendment did not require the trial court to relieve the entire Public Defender's Office from representing Spence, and the trial court was fully within its discretion to deny the public defender's request.

We note that we need not decide whether the conflict between Spence and his original attorney was a conflict of interest that should have been imputed to the entire Public Defender's Office under Virginia Rule of Professional Conduct 1.10.[8] As the United States Supreme Court has pointed out, the ethical standards a particular state chooses to adopt do not constitute the standard for the Sixth Amendment guarantee of effective assistance of counsel. Nix v. Whiteside, 475 U.S. 157, 165 (1986). Rather, "the Sixth Amendment inquiry is into whether the attorney's conduct was 'reasonably effective,'" and "[u]nder the Strickland standard, breach of an ethical standard does not necessarily make out a denial of the Sixth Amendment guarantee of assistance of counsel." Id. Indeed, the Court warned:

> When examining attorney conduct, a court must be careful not to narrow the wide range of conduct acceptable under the Sixth Amendment so restrictively as to constitutionalize particular standards of professional conduct and thereby intrude into the state's proper authority to define and apply the standards of

---

[7] Indeed, Spence's appellate counsel at oral argument expressly declined to argue that Spence's trial counsel's performance was in fact deficient in any way.

[8] Rule 1.10 is the general rule regarding imputed disqualification. Section (a) of Rule 1.10 provides, "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.6, 1.7, 1.9, or 2.10(e)." Rule 1.7, in turn, is the general rule regarding conflicts of interest.

> professional conduct applicable to those it admits to practice in its courts.

Id. Essentially then, an "actual conflict of interest" for purposes of the Sixth Amendment is not to be confused with the mere existence of a "conflict of interest" as defined by a particular jurisdiction's set of ethical rules. Therefore, we need not consider the question of whether the trial court properly understood and applied the Rules of Professional Conduct in this particular instance.[9]

Spence argues that "the trial court should have conducted an inquiry into the extent and effect of the [alleged] conflict of interest." In certain circumstances, a trial court is obligated to inquire into a situation where a conflict of interest may be present. See Carter v. Commonwealth, 11 Va. App. 569, 573, 400 S.E.2d 540, 543 (1991) ("'[I]f the possibility of a conflict of interest is apparent, a trial court has a duty to conduct further inquiry to determine if an actual conflict exists.'" (quoting Dowell v. Commonwealth, 3 Va. App. 555, 559, 351 S.E.2d 915, 917 (1987))); cf. Sullivan, 446 U.S. at 347 ("Unless the trial court knows or reasonably should know that a particular conflict exists, the court need not initiate an inquiry."). Here, however, we need not address whether the trial court had such an obligation in this case. As the Commonwealth points out, the trial court in fact held a special hearing at which the public defender presented her arguments for why she believed her entire office should have been

---

[9] We also note that the Public Defenders' Offices in Virginia are obligated to represent "indigents charged with jailable offenses . . . unless (i) the public defender is unable to represent the defendant or petitioner by reason of conflict of interest or (ii) the court finds that appointment of other counsel is necessary to attain the ends of justice." Code § 19.2-163.4. Here, the conflict of interest that Spence alleges is not a direct conflict of interest, but an imputed one. The threat Spence made to his original attorney was personal to that attorney and was not directed to other attorneys in the Public Defender's Office. It is unclear whether imputed conflicts of interest—especially those that a trial court may reasonably believe will have no perceivable effect on an attorney's representation of a particular defendant—are encompassed by the language of Code § 19.2-163.4. Because it is unnecessary for us to address this particular question to resolve this appeal, we decline to do so. The question of whether Code § 19.2-163.4 was violated is not the same as whether Spence's Sixth Amendment right to effective assistance of counsel was violated.

relieved from representing Spence.  The trial court took the matter under advisement and subsequently denied the public defender's request in a letter to counsel two weeks after the special hearing.  Thus, the trial court did inquire into the nature of the alleged conflict of interest, and Spence's argument that the trial court failed to do so is without merit.

In sum, we hold that the trial court did not abuse its discretion or violate Spence's Sixth Amendment rights in denying the public defender's request to relieve the entire Public Defender's Office from representing Spence.

### III.  CONCLUSION

For the foregoing reasons, we affirm Spence's convictions.

<u>Affirmed.</u>