COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, AtLee and Senior Judge Clements
Argued at Lexington, Virginia

TIMOTHY RAYMOND CARTER

v.      Record No. 0048-16-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
JUDGE ROBERT J. HUMPHREYS
NOVEMBER 1, 2016

FROM THE CIRCUIT COURT OF LEE COUNTY
Tammy S. McElyea, Judge

Timothy W. McAfee (Kristen N. McAfee, on briefs), for appellant.

Benjamin H. Katz, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Timothy Raymond Carter ("Carter") appeals the November 9, 2015 decision of the

Circuit Court of Lee County (the "trial court") convicting Carter of second-degree murder and

the use of a firearm in the commission of murder.  Carter claims the trial court erred in denying

his motions for a mistrial and a new trial based on attorney misconduct, failing to give proper

jury instructions, declaring a witness hostile and adverse, improperly admitting evidence of prior

inconsistent statements and failing to give a curative instruction, and his motion to suppress the

evidence.  Additionally, Carter asserts the evidence was insufficient to support his convictions.

I.  The Evidence is Sufficient to Uphold Carter's Convictions

Carter first challenges the sufficiency of the evidence.  "Under well-settled principles of

appellate review, [this Court] consider[s] the evidence presented at trial in the light most

favorable to the Commonwealth, the prevailing party below."  Smallwood v. Commonwealth,

278 Va. 625, 629, 688 S.E.2d 154, 156 (2009) (quoting Bolden v. Commonwealth, 275 Va. 144,

   [*] Pursuant to Code § 17.1–413, this opinion is not designated for publication.

148, 654 S.E.2d 584, 586 (2008)).  "This principle requires this Court to 'discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences to be drawn therefrom.'"  Beck v. Commonwealth, 66 Va. App. 259, 262, 784 S.E.2d 310, 311 (2016) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980)).  When the sufficiency of the evidence is challenged on appeal, "[t]his Court 'must examine the evidence that supports the conviction and allow the conviction to stand unless it is plainly wrong or without evidence to support it.'"  Commonwealth v. McNeal, 282 Va. 16, 20, 710 S.E.2d 733, 735 (2011) (quoting Vincent v. Commonwealth, 276 Va. 648, 652, 668 S.E.2d 137, 139-40 (2008)).

"It is the prerogative of the trier of fact 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'"  Sierra v. Commonwealth, 59 Va. App. 770, 776, 722 S.E.2d 656, 658 (2012) (quoting Brown v. Commonwealth, 56 Va. App. 178, 185, 692 S.E.2d 271, 274 (2010)).  This Court does "not ask whether we, as appellate judges, believe 'the evidence at the trial established guilt beyond a reasonable doubt.'"  Thomas v. Commonwealth, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (quoting Stevens v. Commonwealth, 46 Va. App. 234, 249, 616 S.E.2d 754, 761 (2005) (*en banc*)).  Rather, we ask only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Stevens, 46 Va. App. at 249, 616 S.E.2d at 761.  This Court's deference to the fact finder "applies not only to findings of fact, but also to any reasonable and justified inferences the fact-finder may have drawn from the facts proved."  Sullivan v. Commonwealth, 280 Va. 672, 676, 701 S.E.2d 61, 63-64 (2010).  "A factfinder's resolution of conflicting facts, as well as competing inferences, receives 'the highest degree of appellate deference.'"  Coleman v. Commonwealth, 52 Va. App. 19, 23 n.2, 660 S.E.2d 687, 689 n.2 (2008) (quoting Thomas, 48 Va. App. at 608, 633 S.E.2d at 231).

It is well established that "the reasonable-hypothesis principle is not a discrete rule unto itself." Haskins v. Commonwealth, 44 Va. App. 1, 8-9, 602 S.E.2d 402, 405 (2004). "The statement that circumstantial evidence must exclude every reasonable theory of innocence is simply another way of stating that the Commonwealth has the burden of proof beyond a reasonable doubt." Commonwealth v. Hudson, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003).[1] Thus, the principle "does not add to the burden of proof placed upon the Commonwealth in a criminal case." Id. It merely "reiterates the standard applicable to every criminal case." Pease v. Commonwealth, 39 Va. App. 342, 360, 573 S.E.2d 272, 280 (2002) (*en banc*) (quoting Cook v. Commonwealth, 226 Va. 427, 433, 309 S.E.2d 325, 329 (1983)).

Further, "[w]hether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Wood v. Commonwealth, 57 Va. App. 286, 306, 701 S.E.2d 810, 819 (2010). "Merely because [the] defendant's theory of the case differs from that taken by the Commonwealth does not mean that every reasonable hypothesis consistent with his innocence has not been excluded. What weight should be given evidence is a matter for the [factfinder] to decide." Miles v. Commonwealth, 205 Va. 462, 467, 138 S.E.2d 22, 27 (1964). "The credibility of the witnesses and the weight accorded the

---

[1] Two types of evidence are presented during a trial—direct evidence and circumstantial evidence. "Direct evidence is offered to prove as a fact the point in issue. Circumstantial evidence, by contrast, is offered to prove a fact not directly in issue, from which a fact in issue may reasonably be inferred." Hudson, 265 Va. at 512, 578 S.E.2d at 785. "There is no distinction in the law between the weight or value to be given to either direct or circumstantial evidence." Id. The Supreme Court of Virginia has expressly stated that "[c]ircumstantial evidence, if convincing, is entitled to the same weight as direct testimony." Gov't Emples. Ins. Co. v. United Servs. Auto. Ass'n, 281 Va. 647, 656, 708 S.E.2d 877, 882-83 (2011) (quoting Britt v. Commonwealth, 276 Va. 569, 573, 667 S.E.2d 763, 765 (2008)). Moreover, "[c]ircumstantial evidence is not viewed in isolation. While no single piece of evidence may be sufficient, the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion." Hudson, 265 Va. at 514, 578 S.E.2d at 786. Thus, "[t]he finder of fact is entitled to consider all of the evidence, without distinction, in reaching its determination." Id. at 512-13, 578 S.E.2d at 785.

evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Wood, 57 Va. App. at 306-07, 701 S.E.2d at 820 (quoting Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995)).

Carter contends that the Commonwealth failed to exclude his reasonable hypothesis of innocence—specifically that his wife Amy Jeanette Carter's ("Amy") death by a single gunshot wound to the neck was the result of a suicide. However, despite Carter's argument that the weight of the physical and forensic evidence disproves that he murdered Amy and supports a finding of suicide because any other conclusion would be entirely inconsistent with the evidence, the fact finder was not required to accept Carter's story. Simply put, Carter's arguments on appeal fail to afford the appropriate deference to the jury's findings of fact.

In this case, Carter did not testify. Thus, the only evidence of his actions was derived from statements Carter provided to law enforcement officers. In those statements, Carter attempted to characterize Amy's death as a suicide that he heroically tried to stop. Yet, Carter's timeline of events surrounding Amy's death contrasted with the testimony of both Christina and Scott Alford and his mother, Reba Carter ("Reba"). Carter claimed that he went directly to his parents' house after Amy's death, which he alleged occurred around noon. However, Reba testified that Carter arrived at her house around 5:00 p.m. Then, at 5:21 p.m., Reba called the local authorities to report Amy's death.

Moreover, Carter claimed to have injured the webbing of his left hand between the thumb and forefinger by jamming it into the hammer area of the .357 revolver used in Amy's death. According to Carter, he attempted to stop the hammer from hitting the firing pin. However, Dr. John Daniel ("Dr. Daniel"), a forensic pathologist, explained that the firing pin on the .357 revolver used did not have a sharp point attached to the hammer and that the firing pin was internal. Additionally, the laboratory analysis of the .357 revolver did not yield any evidence of

- 4 -

Carter's DNA in the hammer area. Furthermore, Carter gave a contradictory explanation of his injury to both his son, D.C., and the nursing staff at the hospital when he explained the injury was from a lawn mower blade. The laboratory analysis further revealed that Carter's DNA was on the revolver's grip, in combination with Amy's DNA.

As in Hudson, the jury was entitled to evaluate Carter's "theory of innocence upon consideration of all the evidence and the reasonable inferences that flow from that evidence." 265 Va. at 517, 578 S.E.2d at 787. The jury was fully within its discretion when it found, based on the evidence presented at trial, that the evidence from the crime scene and the ensuing investigation was inconsistent with Carter's theory of innocence and with his own statements to police. Furthermore, based upon the record before us, this Court cannot say that the jury's conclusion that Carter committed second-degree murder and used a firearm in the commission thereof was "plainly wrong or without evidence to support it." Hickson v. Commonwealth, 258 Va. 383, 387, 520 S.E.2d 643, 645 (1999). Therefore, the trial court did not err in finding the evidence sufficient to convict Carter of second-degree murder and the use of a firearm in the commission of murder.

II. No Mistrial due to Commonwealth's "dry firing" Demonstration

Carter argues that he was deprived of his constitutional right to confront his accuser. "The Supreme Court 'follow[s] the general rule that error arising from an improper question or improper conduct of counsel may usually be cured by prompt and decisive action of the trial court without granting a motion for a mistrial.'" Landeck v. Commonwealth, 59 Va. App. 744, 756, 722 S.E.2d 643, 649 (2012) (quoting Black v. Commonwealth, 223 Va. 277, 286, 288 S.E.2d 449, 454 (1982)). "But whether the conduct was prejudicial is basically a question of fact to be determined in light of all the circumstances in each particular case." Id. at 755, 722 S.E.2d at 649 (internal citations and quotations omitted). A trial court's calculation concerning the

necessity of a mistrial "must be made in light of all the circumstances in the case, including whether the jury was given a cautionary instruction regarding any improper remark or question." Lewis v. Commonwealth, 269 Va. 209, 214, 608 S.E.2d 907, 910 (2005). The standard for reviewing a trial court's ruling on a motion for a mistrial is well established:

> "The decision whether to grant a motion for mistrial lies within a trial court's exercise of discretion. When a motion for mistrial is made, based upon an allegedly prejudicial event, the trial court must make an initial factual determination, in the light of all the circumstances of the case, whether the defendant's rights are so indelibly prejudiced as to necessitate a new trial. Unless we can say that the trial court's determination was wrong as a matter of law, we will not disturb its judgment on appeal."

Spence v. Commonwealth, 60 Va. App. 355, 364, 727 S.E.2d 786, 790 (2012) (quoting Blanton v. Commonwealth, 280 Va. 447, 455, 699 S.E.2d 279, 284 (2010)).

In the case at bar, Carter alleges the prosecutorial demonstration before the jury requires a mistrial. During the prosecutor's cross-examination of Dr. Daniel, Dr. Daniel opined that Carter sustained the injury to the webbing of his left hand by contact with either the .357 revolver's rear sight or by the back of the hammer. Dr. Daniel explained that the firing pin for the .357 revolver in question was not a sharp point attached to its hammer. The prosecutor then stated, "If I had a sharp – if the firing pin was right here, and I did this, I would cut myself, wouldn't I?" Finally, the prosecutor asked Dr. Daniel if he was able to see a resulting indentation on his thumb as a consequence of the way he had manipulated the hammer.

At this moment, Carter objected that the prosecutor "may not testify and demonstrate things on himself in front of the jury." The trial court directed the prosecutor to ask a question of the witness. He followed up by asking if Dr. Daniel had seen what he had done, and if he could observe whether the prosecutor was bleeding as a result. Then, the prosecutor asked whether Dr. Daniel was aware of the extent to which Carter attributed his injury to having been cut by the

front of the hammer, and noted that the same process had not injured him. At this, Carter asked for a mistrial stating that counsel "continues to inject himself personally into this case."

The trial court offered to have the jury excused if Carter wished to articulate his argument in support of a mistrial in greater detail. Defense counsel declined the trial court's invitation. The trial court denied the motion for a mistrial and directed the jury to disregard the demonstration. Then, defense counsel asked the trial court to "prohibit [the prosecutor] from demonstrating the weapon on himself." The trial court responded, "[w]ell, if there's an objection to a future question, then it may be made at the appropriate time."

Although an attorney is not a witness and may not testify, we conclude that any error was cured by the instruction the trial court gave the jury to "disregard" the prosecutor's "demonstration" in reference to the line of inquiry concerning the .357 revolver and its hammer. "[I]t is always to be presumed that the jury followed an explicit cautionary instruction promptly given, unless the record clearly shows that the jury disregarded it." Spencer v. Commonwealth, 240 Va. 78, 95, 393 S.E.2d 609, 619 (1990) (citing LeVasseur v. Commonwealth, 225 Va. 564, 589, 304 S.E.2d 644, 657 (1983)). The record here is devoid of any evidence suggesting that the jury failed to follow the trial court's instruction. Therefore, it must be presumed that they did. Under the facts presented, we hold that the trial court did not abuse its discretion in concluding, in light of all the circumstances of the case, Carter's rights had not been "so indelibly prejudiced as to necessitate a new trial." Spence, 60 Va. App. at 364, 727 S.E.2d at 790.

### III. No Juror Misconduct

Next, Carter argues that contact between the prosecutor, his secretary, and a juror ("Juror Blair") represented a violation of the trial court's pre-trial instructions. Additionally, Carter argues that, in speaking to Juror Blair, the prosecutor violated rules of professional conduct and that the provision of a cigarette to Juror Blair represented a thing of value, which he contends

amounts to a *per se* violation of Carter's constitutional rights. Carter requests "a bright line rule" which would grant a mistrial regardless of the intent of the juror or prosecuting attorney. [2]

It is well established that "private communications, possibly prejudicial, between jurors and third parties, are forbidden and invalidate the verdict unless their harmlessness is made to appear." Dozier v. Morrisette, 198 Va. 37, 40, 92 S.E.2d 366, 368 (1956). "In considering a motion to set aside when juror misconduct is alleged, the trial court has the affirmative duty to investigate the charges and to ascertain whether or not, as a matter of fact, the jur[or] was guilty of such misconduct." Evans v. Commonwealth, 39 Va. App. 229, 237, 572 S.E.2d 481, 484 (2002) (internal citations omitted).

In deciding whether to order a new trial, the trial court must be cognizant of the following:

> A juror may not properly receive any information about a case he is hearing except in open court and in the manner provided by law. The reception of any evidence by the jury, especially in a criminal case, in addition to that produced at trial is ground for setting aside the verdict whenever there is sufficient ground to believe that . . . an accused in a criminal case, has been prejudiced by receipt of the information. And the test in a criminal case "is not whether the jurors were actually prejudiced by the extraneous matter, but whether they might have been so prejudiced. If they might have been prejudiced, then the purity of the verdict is open to serious doubt and the verdict should be set aside and a new trial awarded."

Id. at 237, 572 S.E.2d at 485 (quoting Brittle v. Commonwealth, 222 Va. 518, 522, 281 S.E.2d 889, 890 (1981)). "[A] motion for a new trial on the ground of juror misconduct is addressed to the sound discretion of the trial judge." Id. at 237-38, 572 S.E.2d at 485 (quoting Commercial Union Ins. Co v. Moorefield, 231 Va. 260, 265, 343 S.E.2d 329, 332 (1986)). However, "this

---

[2] Currently, only the Virginia Rules of Professional Conduct specifically address lawyer and juror interaction. Rule 3.5(a)(1) prohibits a lawyer from communication, directly or indirectly, with a juror before or during the trial of case. Whereas, Rule 3.5(c) demands that a lawyer promptly advise the trial court if aware of improper conduct by a juror.

principle must be applied 'with the added caution that only slight evidence of influence or prejudice as a result of such misconduct of a juror should be required to warrant the granting of a new trial.'" Id. at 238, 572 S.E.2d at 485 (quoting Hickerson v. Burner, 186 Va. 66, 72, 41 S.E.2d 451, 454 (1947)).

Here, after Carter's convictions, but prior to sentencing, Carter submitted a motion for new trial based upon an affidavit submitted by his brother, Mark Carter ("Mark"). Mark observed the prosecutor and his secretary speaking with Juror Blair on the sidewalk outside of the Lee County courthouse during a break in the trial. Additionally, Mark saw Juror Blair obtain a cigarette from the prosecutor's secretary. Following its investigative hearing to ascertain whether or not, as a matter of fact, Juror Blair was guilty of such misconduct, the trial court found that the facts established that as the prosecutor and his secretary were emerging from the attorney's vehicle, a short distance from the courthouse, Juror Blair approached and asked the secretary for a cigarette. The trial court found that Carter's case was not discussed. Rather, the only additional exchange may have involved an observation about the weather.

Ultimately, the trial court found that its instructions to avoid a discussion of the case were not violated and that granting a new trial required a conclusion that Carter had not received a fair trial. Next, the trial court found that Carter had not "in any manner been prejudiced" as a result of the encounter and that the provision of a cigarette was a thing of "relatively and very insignificant value," which Juror Blair credibly testified had no impact on his deliberations. Finally, citing Smith v. Philips, 455 U.S. 209 (1992), the trial court held that these circumstances failed to support an imputation of bias to Juror Blair.

As presented in this record, we hold that it is clear that the evidence lacks a showing of even slight prejudice. Evans, 39 Va. App. at 237, 572 S.E.2d at 485. Therefore, the trial court did not abuse its discretion in concluding that Carter's right to a fair trial had not been

prejudiced. Thus, the trial court did not err in declining to set aside the verdict and declare a mistrial.

## IV. Jury Instructions 3B, 1M, and 1

In his next assignments of error, Carter argues that the trial court erred in refusing his requested jury instructions 3B and 1M. Additionally, he considers the trial court erred in giving Jury Instruction 1.

Pursuant to Rule 5A:18, Carter waived his assignment of error regarding Jury Instruction 3B. Rule 5A:18 provides, in relevant part:

> No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

"Applying Rule 5A:18, an 'appellate court, in fairness to the trial judge, should not . . . put a different twist on a question that is at odds with the question presented to the trial court.'" Johnson v. Commonwealth, 58 Va. App. 625, 637, 712 S.E.2d 751, 757 (2011) (quoting Commonwealth v. Shifflett, 257 Va. 34, 44, 510 S.E.2d 232, 237 (1999)). The trial court must be able to rule intelligently. Thus, "the parties must inform the circuit court 'of the precise points of objection in the minds of counsel.'" Maxwell v. Commonwealth, 287 Va. 258, 265, 754 S.E.2d 516, 519 (2014) (quoting Gooch v. City of Lynchburg, 201 Va. 172, 177, 110 S.E.2d 236, 239-40 (1959)).

For the first time on appeal, Carter relies on King v. Commonwealth, 64 Va. App. 580, 770 S.E.2d 214 (2015) (*en banc*), to argue that, having adduced evidence supporting a theory that Amy's death was a suicide, the trial court was compelled to instruct the jury regarding a competing explanation of the cause of her death. Because the trial court did not receive the

benefit of hearing this argument at trial, we conclude that Carter has not preserved this argument for appellate review.

Next, Carter contends that because Jury Instruction 1 was given to the jury, authorizing a guilty finding of voluntary manslaughter if the killing occurred in the course of "mutual combat," then the trial court was further required to provide the requested Jury Instruction 1M, which concerned whether the killing occurred as a result of self-defense.[3]

A trial court "has broad discretion in giving or denying instructions requested." Chibikom v. Commonwealth, 54 Va. App. 422, 425, 680 S.E.2d 295, 296 (2009) (quoting Gaines v. Commonwealth, 39 Va. App. 562, 568, 574 S.E.2d 775, 778 (2003) (*en banc*)). "A reviewing court's responsibility in reviewing jury instructions is to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." Id. (quoting Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988)). "And in deciding whether a particular instruction is appropriate, we view the facts in the light most favorable to the proponent of the instruction." Cooper v. Commonwealth, 277 Va. 377, 381, 673 S.E.2d 185, 187 (2009). It is a "well-established rule that, as with any proffered instruction that is otherwise a correct statement of law, an instruction on the defense of self-defense 'is proper . . . if supported by more than a scintilla of evidence' and 'it is not error to refuse an instruction when there is no evidence to support it.'" Commonwealth v. Cary, 271 Va. 87, 100, 623 S.E.2d

---

[3] Jury Instruction 1M – Self-Defense:

> If you believe that the defendant and the decedent were engaged in a fight prior to the death, and you believe that the Defendant was without fault in provoking or bringing on the fight, and if you further believe that the defendant reasonable [sic] feared, under the circumstances as they appeared to him, that he was in danger of being killed or that he was in danger of great bodily harm, then the killing was in self-defense, and you shall find the defendant not guilty.

- 11 -

906, 913 (2006) (quoting Commonwealth v. Sands, 262 Va. 724, 729, 553 S.E.2d 733, 736 (2001)).

In this case, the only evidence remotely addressing Carter's position that the jury should have the option of considering the question of self-defense as a consequence of the mutual combat language present in Jury Instruction 1 came from the Commonwealth's redirect of Investigator Bobby Ellis ("Investigator Ellis") of the Lee County Sheriff's Department. On redirect, Investigator Ellis was asked to recreate the position Carter claimed Amy held the gun when he asserted he tried to prevent its firing. During this recreation, Investigator Ellis supposed that the position of the gun was pointed upward, inverted toward Amy's chin. Then, Investigator Ellis noted that he found it "awkward, but . . . easier" to grab the gun when it was pointed "straight out in his direction."

Carter presented no evidence, not even a scintilla, to establish the requisite elements of self-defense. Carter's own explanation of Amy's death did not claim he acted in self- defense.[4] Thus, even viewing requested Jury Instruction 1M in a light most favorable to Carter as the proponent, we hold that Carter offered no answer to the trial court's observation that there was less than a scintilla of evidence presented to support a self-defense instruction. Cooper, 277 Va. at 381, 673 S.E.2d at 187. Therefore, the trial court did not abuse its discretion in refusing the requested Instruction 1M, or in the provision of Instruction 1, in the absence of 1M.

---

[4] The "bare fear" of serious bodily injury, or even death, however well-grounded, will not justify the taking of human life. There must [also] be some overt act indicative of imminent danger at the time. In other words, a defendant must wait till some overt act is done[,] . . . till the danger becomes imminent.

Cary, 271 Va. at 99, 623 S.E.2d at 912 (internal citations and quotations omitted).

V.  Hostile and Adverse Witness:  Scott Alford

Next, Carter challenges the trial court's ruling that declared a witness hostile and adverse. "[This Court] review[s] a trial court's ruling that a witness is a hostile witness under an abuse of discretion standard."  Ramsey v. Commonwealth, 63 Va. App. 341, 362, 757 S.E.2d 576, 587 (2014).

> "The trial court determines whether a witness is hostile or adverse because 'the trial court sees and hears the witness on the stand, observes his demeanor, and hence is in a much better position to determine whether he is in fact adverse or hostile than is an appellate court which must rely on the printed record.'"

Id. (quoting Teleguz v. Commonwealth, 273 Va. 458, 479, 643 S.E.2d 708, 722 (2007)).

"A party's own witness 'proves adverse' if the witness 'surprises the party by changing stories or becoming hostile on the stand.'"  Maxey v. Commonwealth, 26 Va. App. 514, 519, 495 S.E.2d 536, 539 (1998).  "Code § 8.01-403 allows a party to impeach his or her own witness by prior inconsistent statements only when the witness whom the party expected to testify favorably has suddenly given unexpected, adverse testimony on the stand."  Id. at 519-20, 495 S.E.2d at 539.  "'In order to impeach one's own witness, however, it is not sufficient merely that the witness gave a contradictory statement on a prior occasion.'  Rather, the 'testimony offered must be injurious or damaging to the case of the party who called the witness.'"  Ragland v. Commonwealth, 16 Va. App. 913, 920-21, 434 S.E.2d 675, 680 (1993) (quoting Brown v. Commonwealth, 6 Va. App. 82, 85, 366 S.E.2d 716, 718 (1988)).

In Brown, this Court held that a witness' testimony that he "had not seen the stabbing" for which Brown was on trial, in direct contradiction to his earlier statement to investigators that he had witnessed the incident, lacked probative value and was not "damaging or injurious to the Commonwealth's case."  6 Va. App. at 86, 366 S.E.2d at 718.  Here, in reviewing the prosecutor's direct examination of Scott Alford, we conclude the testimony given did not contain

any substantive statements that were inconsistent with his prior statements to law enforcement. Scott Alford simply could not remember the details of a conversation he had years earlier regarding whether or not he told law enforcement officers that, while driving home with Carter, Carter told Amy over the phone, "I've got 120 Xanaxes, and if that don't do it, I've got a .357." While the testimony did not meet the expectations of the Commonwealth, it was not damaging to the Commonwealth's case. Thus, even though the trial court had the benefit of viewing Scott Alford's live testimony, we conclude that the trial court abused its discretion in finding Scott Alford a hostile and adverse witness solely as a consequence of his desire to be evasive.

Yet, having found that the trial court erred in declaring Scott Alford a hostile and adverse witness to the Commonwealth, we nevertheless hold that, under the facts of this case, the error was harmless as a matter of law. In determining whether a trial court's error was harmless, this Court looks to whether the defendant received "a fair trial on the merits and substantial justice [was] reached." Timmons v. Commonwealth, 15 Va. App. 196, 199, 421 S.E.2d 894, 896 (1992). "'Non-constitutional error is harmless when it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached.'" Bell v. Commonwealth, 66 Va. App. 479, 488, 788 S.E.2d 272, 276 (2016) (quoting Lavinder v. Commonwealth, 12 Va. App. 1003, 1005-06, 407 S.E.2d 910, 911 (1991) (*en banc*)). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Ragland, 16 Va. App. at 921, 434 S.E.2d at 680 (quoting Lavinder, 12 Va. App. at 1006, 407 S.E.2d at 911). In this instance, the remaining evidence against Carter in the light most favorable to the Commonwealth was substantial. On this record, the benefit the Commonwealth improperly received from the trial court by erroneously declaring Alford to be hostile was the ability to ask leading questions of their own witness and the admission of a

statement Alford made to the investigator that Carter had told him "I've got 120 Xanaxes, and if that don't do it, I've got a .357." Based upon our review of the record and the other evidence, including Carter's failure to timely object to the admissibility of Alford's prior statement and the curative instruction given by the trial court discussed more fully below, we conclude that declaring Scott Alford a hostile or adverse witness did not affect the verdict or otherwise deprive Carter of a fair trial on the merits.

VI. Impeachment of Scott Alford and Cautionary and Limiting Jury Instructions

In his next several assignments of error, Carter argues that the trial court improperly admitted evidence of prior inconsistent statements and failed to give a curative instruction. Carter takes issue with a statement allegedly made by Scott Alford in an earlier conversation with Investigator Ellis. Carter argues that the introduction of this statement into evidence was highly prejudicial and that the trial court's instruction to the jury regarding the appropriate limitations on the use of prior inconsistent statements did not offer sufficient protection to Carter.

Pursuant to the contemporaneous objection rule, Carter waived these assignments of error. See Rule 5A:18. Rule 5A:18 contains the contemporaneous objection rule applicable to this Court. "The purpose of the contemporaneous objection rule 'is to avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'" Maxwell, 287 Va. at 264-65, 754 S.E.2d at 519 (quoting State Highway Comm'r v. Easley, 215 Va. 197, 201, 207 S.E.2d 870, 873 (1974)). In order for it to "rule intelligently, the parties must inform the circuit court 'of the precise points of objection in the minds of counsel.'" Id. (quoting Gooch, 201 Va. at 177, 110 S.E.2d at 239-40). Pursuant to Rule 5A:18, the objection must "be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010). "This requirement allows the circuit court to

- 15 -

remedy the error while also giving 'the opposing party the opportunity to meet the objection at that stage of the proceeding.'" Maxwell, 287 Va. at 265, 754 S.E.2d at 519 (quoting Scialdone, 279 Va. at 437, 689 S.E.2d at 724).

Here, the record fails to show that Carter contemporaneously objected to the prosecutor's inquiry regarding that particular prior statement attributed to Scott Alford on the same grounds he now asserts on appeal. Rather, Carter offered a general objection, prior to the effort to impeach Alford, that any prior statements made by Alford would be more prejudicial than probative. Thus, pursuant to Rule 5A:18, Carter failed to make an argument in the trial court in reference to the specific statement now identified. Therefore, we hold that Carter may not now argue it for the first time on appeal.

## VII. Proper Denial of Carter's Motion to Suppress

Finally, Carter contends that the affidavit relied upon to secure a search warrant of his residence failed to (1) set forth any nexus between the items sought and their relevance to the investigation, (2) the facts set forth therein were neither the product of the affiant's personal knowledge, nor had the veracity of the statements been investigated, (3) that Code § 19.2-53 prohibited the seizure of certain items taken, and (4) that neither the good faith exception to the exclusionary rule, as set forth in United States v. Leon, 468 U.S. 897 (1984), nor the plain view doctrine should apply to prevent the suppression of this evidence.

"A defendant's claim that evidence was seized in violation of the Fourth Amendment presents a mixed question of law and fact that [the appellate court] review[s] de novo on appeal." McCain v. Commonwealth, 275 Va. 546, 551, 659 S.E.2d 512, 515 (2008). In making its determination, this Court must give deference to the trial court's factual findings and "independently determine whether the manner in which the evidence was obtained meets the requirements of the Fourth Amendment." Id. at 552, 659 S.E.2d at 515. "The burden is on the

- 16 -

defendant to show that the denial of his suppression motion, when the evidence is considered in the light most favorable to the Commonwealth, was reversible error." McCain v. Commonwealth, 261 Va. 483, 490, 545 S.E.2d 541, 545 (2001).

"The Fourth Amendment of the United States Constitution requires that a search warrant be based upon probable cause." Sowers v. Commonwealth, 49 Va. App. 588, 595, 643 S.E.2d 506, 510 (2007). "[T]o support probable cause for a warrant to search a residence, an affidavit must establish, with a fair probability, a link between contraband and the residence to be searched." Id. at 596, 643 S.E.2d at 510. "[T]he existence of probable cause is determined by examining the totality-of-the-circumstances." Anzualda v. Commonwealth, 44 Va. App. 764, 774, 607 S.E.2d 749, 754 (2005) (*en banc*). "[T]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." Id. at 774-75, 607 S.E.2d at 754 (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)). "When determining whether probable cause exists, the magistrate may draw reasonable inferences from the material supplied to him." Id. at 775, 607 S.E.2d at 754 (citing Williams v. Commonwealth, 4 Va. App. 53, 68, 354 S.E.2d 79, 87 (1987)). On appeal, this Court "must grant 'great deference' to the magistrate's interpretation of the predicate facts supporting the issuance . . . and to the determination of whether probable cause supported the warrant." Janis v. Commonwealth, 22 Va. App. 646, 652, 472 S.E.2d 649, 652 (1996). "This deferential standard of review is appropriate to further the Fourth Amendment's strong preference for searches conducted pursuant to a warrant." Anzualda, 44 Va. App. at 775, 607 S.E.2d at 754; see also Leon, 468 U.S. at 914.

Here, the affidavit for the search warrant, sworn before the magistrate by Investigator Ellis on April 15, 2011, provided:

- 17 -

On April 14, 2011 this Investigator responded to a Homicide at the residence of Tim and Amy Carter in the Flatwoods section of Lee Co[unty]. Amy Carter was found in the bathroom with a gunshot wound to the neck. Tim Carter the husband was the only person present at the residence when the shooting occurred. Tim Carter's statement that Amy Carter had shot herself was not consistent with the evidence found at the scene. Family members provided statements to Capt. Scott that Tim Carter had been physically abusive to Amy Carter in the past, that the two have major drug problems all of which has lead [sic] serious financial problems.

This investigator processed the crime scene which was found to be not consisted [sic] to the statement made by Tim Carter and statements made by family members of his physically abuse to Amy Carter. Also this investigator has personal knowledge of Tim and Amy Carter drug use.

Additionally, the affidavit described the place to be searched and listed the things to be searched for, including:

One AT&T cellular telephone [] subscriber info. T&A Logging contact person Amy Carter, One cellular telephone [] subscriber info. Lee County Tree Service contact person Tim Carter and any other cellular devices found, also any computers or any other electronic devices with the capacity to store receive or send any electronic data. Any financial asset records, legal documents, wills, E-mails, notes, letters, telephone records and diaries.

In denying the motion to suppress, the trial court concluded that a magistrate could reasonably rely upon Investigator Ellis's personal knowledge of the crime scene and his conclusion that Carter's statements alleging that Amy shot herself were inconsistent with what was found to support the issuance of the search warrant. Additionally, Carter's claim that the specific items sought in the search warrant were not relevant to a homicide investigation fails. The question of what evidence may be relevant to a criminal prosecution is ultimately determined at trial and not by a magistrate at the time a search warrant is issued when it is often unknown what evidence the search will uncover. The magistrate's task is to determine if probable cause that a crime has occurred exists and if so, whether there is also probable cause

that evidence of the crime will be found at the location sought to be searched. The scope of the search may well be limited by the nature of the evidence searched for but whether such evidence will ultimately be admissible at trial is not part of the magistrate's constitutional calculus. In this case, the trial court identified the affidavit's reference to drug usage and the officer's personal knowledge of this fact as it related to Carter and Amy in support of why a magistrate might reasonably conclude why the request to seize computers, cell phones, and other electronic devices was relevant to the investigation. Consistent with the requirement that the magistrate's probable cause determination must consider "the totality-of-the-circumstances" the trial court's conclusion in this regard was not wrong as a matter of law. Anzualda, 44 Va. App. at 774, 607 S.E.2d at 754.

In addition, we hold that the trial court correctly applied the good faith exception to the exclusionary rule when it assumed without deciding that the warrant was overbroad. "In Leon, the United States Supreme Court held that 'suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.'" Polston v. Commonwealth, 255 Va. 500, 503, 498 S.E.2d 924, 925 (1998) (quoting Leon, 468 U.S. at 918). In Leon, the Supreme Court reasoned that "[i]n the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient." 468 U.S. at 921. Thus, "[u]nder the good faith exception, '[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence will not be excluded.'" Sowers, 49 Va. App. at 602, 643 S.E.2d at 513 (quoting Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31, 33 (2000)).

In this case, the trial court found the absence of evidence indicating a knowing or recklessly false statement in the affidavit. In support of this conclusion, the trial court relied on Investigator Ellis's more expansive explanation during the evidentiary hearing, regarding what he observed at the scene that he found to be inconsistent with Carter's statement regarding how Amy's death occurred. Thus, we hold that the trial court correctly observed that the consideration was not limited to the affidavit's four corners; rather, in assessing the officer's good faith, the trial court could consider the information known to the officer as well. Adams v. Commonwealth, 275 Va. 260, 271-72, 657 S.E.2d 87, 93-94 (2008).

We hold that the circuit court did not err in denying Carter's motions for a mistrial and a new trial based on attorney misconduct, failing to give proper jury instructions, improperly admitting evidence of prior inconsistent statements, and in failing to give a curative instruction to the jury. We further hold that the circuit court's declaration of a witness to be hostile and adverse, although error, was harmless in the context of the totality of the evidence presented. Additionally, we affirm the circuit court's denial of Carter's motion to suppress the evidence. Finally, finding there to be sufficient evidence in the record to support Carter's convictions for second-degree murder and the use of a firearm in the commission of murder, we affirm Carter's convictions.

Affirmed.